**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| | : | Case No.  09-40805 |
| TITLEMAX HOLDINGS, LLC, <u>et al.</u>, | : | |
| | : | (Jointly Administered) |
| | : | |
| Debtors. | : | Hon. Lamar W. Davis, Jr. |

**THIRD AMENDED DISCLOSURE STATEMENT FOR PLAN OF
REORGANIZATION OF TITLEMAX HOLDINGS, LLC, ET AL.**

**Gray & Pannell LLP**

Marvin A. Fentress
P.O. Box 8050 (31412)
24 Drayton Street, Suite 1000
Savannah, Georgia 31401
Telephone: 912-443-4043
Facsimile: 912-443-4063

**DLA Piper LLP (US)**

Thomas R. Califano
Jeremy R. Johnson
Christopher R. Thomson
1251 Avenue of the Americas
New York, New York  10020-1104
Telephone: 212-335-4500
Facsimile: 212-335-4501

*Attorneys for Debtors and Debtors in Possession*

**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN.
ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A
DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE COURT.   THIS
DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS
NOT BEEN APPROVED BY THE COURT.**

# DISCLAIMER

TITLEMAX HOLDINGS LLC, ET AL. (AS DEFINED HEREIN, THE "DEBTORS") IS FURNISHING THIS DISCLOSURE STATEMENT AND THE EXHIBITS HERETO, THE ACCOMPANYING BALLOTS, AND THE RELATED MATERIALS DELIVERED HEREWITH PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE, 11 U.S.C. §§ 101 ET SEQ., AS AMENDED, IN CONNECTION WITH THEIR SOLICITATION OF ACCEPTANCES OF THE PROPOSED REORGANIZATION PLAN DESCRIBED HEREIN.

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS INCLUDED HEREIN FOR PURPOSES OF SOLICITING ACCEPTANCES OF THE PLAN OF REORGANIZATION OF THE DEBTORS AND MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN.  NO PERSON MAY GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS, OTHER THAN THE INFORMATION AND REPRESENTATIONS CONTAINED IN THIS DISCLOSURE STATEMENT, REGARDING THE PLAN OR THE SOLICITATION OF ACCEPTANCES OF THE PLAN.

ALL CREDITORS ARE ADVISED AND ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.   PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN AND THE EXHIBITS AND SCHEDULES ANNEXED TO THE PLAN AND THIS DISCLOSURE STATEMENT.   THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF, AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER THE DATE HEREOF.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF TITLE 11 OF THE UNITED STATES BANKRUPTCY CODE AND RULE 3016(c) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER NON-BANKRUPTCY LAW.   THIS DISCLOSURE STATEMENT HAS BEEN NEITHER APPROVED NOR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION (THE "SEC"), NOR HAS THE SEC PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.  PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING SECURITIES OR CLAIMS OF THE DEBTORS IN THESE CHAPTER 11 CASES SHOULD EVALUATE THIS DISCLOSURE STATEMENT AND THE PLAN IN LIGHT OF THE PURPOSE FOR WHICH THEY WERE PREPARED.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION OR WAIVER BY ANY PARTY, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS PURSUANT TO RULE 408 OF THE FEDERAL RULES OF EVIDENCE AND OTHER APPLICABLE EVIDENTIARY RULES.

THIS DISCLOSURE STATEMENT SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES OR OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST, OR EQUITY INTERESTS IN THE DEBTORS.

THIS DISCLOSURE STATEMENT AND THE PLAN INCORPORATE THE TERMS OF A SETTLEMENT WITH THE DEBTORS' SECURED LENDERS AND THE SECURED LENDERS RESERVE ALL RIGHTS TO OBJECT TO CONFIRMATION OF A SIMILAR PLAN ON ANY GROUNDS WHATSOEVER IF THE SETTLEMENT IS NOT CONSUMMATED THROUGH CONFIRMATION OF THE PLAN OR OTHERWISE.

THE DEBTORS BELIEVE THAT THE PLAN WILL ENABLE THE DEBTORS TO ACCOMPLISH THE OBJECTIVES OF CHAPTER 11 AND THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTERESTS OF THE DEBTORS AND THE HOLDERS OF ALL CLAIMS.  ACCORDINGLY, THE DEBTORS URGE THOSE HOLDERS OF CLAIMS ENTITLED TO VOTE TO VOTE TO ACCEPT THE PLAN.

IF YOU HAVE QUESTIONS ABOUT THE PACKET OF MATERIALS THAT YOU RECEIVED, PLEASE CONTACT EPIQ BANKRUPTCY SOLUTIONS, LLC ATTN: TITLEMAX BALLOT PROCESSING CENTER, FDR STATION, P.O. BOX 5014, NEW YORK, NEW YORK 10150-5014, TELEPHONE NUMBER:  (646) 282-2400, OR EMAIL: PROCESSING@EPIQSYSTEMS.COM

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................. 4

    A.  Overview of the Debtors' Business ........................................................ 4

    B.  Overview of the Debtors' Corporate Structure ...................................... 6

    C.  Events Leading to the Chapter 11 Cases ................................................ 6

    D.  Events During the Chapter 11 Cases ...................................................... 7

        1.  The Filing of the Chapter 11 Petitions and First-Day Motions ................ 7

        2.  Formation of the Committee .......................................................... 9

        3.  Cash Collateral Motion .................................................................. 9

        4.  Bar Date Motion ........................................................................... 10

        5.  Exclusivity Motion ....................................................................... 10

        6.  Estimation Motion ........................................................................ 11

        7.  Unexpired Lease Motions ............................................................. 11

    E.  Classification and Treatment of Claims and Interests Under the Plan ................ 11

II.  PLAN OVERVIEW ........................................................................................... 14

    A.  Introduction ........................................................................................... 14

    B.  Mechanics of Distribution ..................................................................... 15

    C.  Summary of Confirmation Requirements ............................................... 15

    D.  Voting Instructions and Deadline .......................................................... 16

        1.  General Information ....................................................................... 16

        2.  Unimpaired Classes Are Deemed to Accept the Plan and Do Not Vote ... 16

        3.  Claims Which Are Not Allowed .................................................... 17

        4.  Voting and Record Date ................................................................ 17

            a.  How to Vote ....................................................................... 17

            b.  Ballots ............................................................................... 17

    E.  The Confirmation Hearing ..................................................................... 18

    F.  Interpretation of Terms ......................................................................... 18

III.  THE PLAN OF REORGANIZATION ............................................................... 19

    A.  Classification and Treatment of Claims and Interests Under the Plan ................ 19

    B.  Treatment of Administrative Claims, Priority Tax Claims and Trustee Fees ...... 19

        1.  Administrative Claims ................................................................... 19

EAST\42806146.9

# TABLE OF CONTENTS
## (continued)

| | | | |
|---|---|---|---|
| | 2. | TY Debt Claim | 21 |
| | 3. | TitleMax Aviation Claims | 21 |
| | 4. | TY Tax Claims | 21 |
| | 5. | Priority Tax Claims | 21 |
| | 6. | US Trustee Fees | 22 |
| C. | | Treatment of Classified Claims and Interests | 22 |
| | 1. | Class 1:  Secured Lender Claims | 22 |
| | 2. | Class 2:  Unsecured Priority Claims | 23 |
| | 3. | Class 3:  Subordinated Noteholder Claims | 23 |
| | 4. | Class 4:  Unsecured Nonpriority Claims (General Unsecured Claims) | 23 |
| | 5. | Class 5:  Litigation Claims | 24 |
| | 6. | Class 6:  Interests | 24 |
| D. | | Implementation of the Plan | 24 |
| | 1. | Terms of the New Lender Claim | 24 |
| | 2. | Terms of the New Subordinated Note | 26 |
| | 3. | Payment of the Litigation Claims | 26 |
| | 4. | Distributions on Account of Interests | 27 |
| | 5. | New Capital | 27 |
| E. | | Funding of the Plan | 28 |
| F. | | Risk Factors in Connection with the Plan | 28 |
| G. | | Continued Corporate Existence | 29 |
| H. | | Post-Effective Date Compensation of Professionals | 29 |
| I. | | Other Plan Provisions | 29 |
| | 1. | Preservation of Rights of Action | 29 |
| | 2. | Miscellaneous Matters | 29 |
| | | a. Administrative Bar Date | 30 |
| | | b. Further Authorization | 30 |
| | | c. Satisfaction of Claims and Interests | 30 |
| | | d. Abandoned Property | 30 |

# TABLE OF CONTENTS
(continued)

**Page**

|  |  |  |  |
|---|---|---|---|
| | e. | Post-Effective Date Effect of Evidences of Claims or Interests | 31 |
| | f. | Term of Stays | 31 |
| | g. | Post-Confirmation Employment and Payment of Professionals | 31 |
| | h. | Retention of Jurisdiction | 31 |
| | i. | Claims Arising from Certain Judgments | 33 |
| | j. | Retention and Enforcement of Claims | 33 |
| | k. | Objections to Claims and Interests | 33 |
| | l. | Distributions Under the Plan | 34 |
| | m. | Unclaimed Cash | 35 |
| | n. | Unnegotiated Distribution Checks | 36 |
| | o. | Distribution Dates | 36 |
| | p. | Orders Respecting Claims Distribution | 36 |
| | q. | Modification of Plan | 36 |
| | r. | Severability | 37 |
| | s. | Successors and Assigns | 37 |
| J. | | Conditions for Confirmation of the Plan | 37 |
| | 1. | Conditions to Confirmation | 37 |
| | 2. | Waiver and Nonfulfillment of Conditions to Confirmation | 38 |
| | 3. | Conditions to Effective Date | 38 |
| | 4. | Waiver and Nonfulfillment of Conditions to Effective Date | 38 |
| | 5. | Confirmation Order Provisions for Pre-Effective Date Actions | 38 |
| IV. | | TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 39 |
| | A. | Assumption and Rejection of Executory Contracts | 39 |
| | B. | Insurance Policies | 39 |
| | C. | Claims Based Upon Rejection of Executory Contracts or Unexpired Leases | 39 |
| | D. | Disallowance of Contribution Claims | 40 |
| V. | | STATUTORY REQUIREMENTS FOR CONFIRMATION OF THE PLAN OF REORGANIZATION | 40 |
| | A. | Elements of Confirmation | 40 |

EAST\42806146.9

# TABLE OF CONTENTS
## (continued)

**Page**

| | | |
|---|---|---|
| | B. | Best Interests of Claim and Interest Holders ........................................ 41 |
| | C. | Feasibility of the Plan ......................................................................... 42 |
| | D. | Confirmation of the Plan if One or More Classes Do Not Accept ..................... 43 |
| | E. | Hearing on Confirmation of the Plan .................................................. 44 |
| VI. | | PROVISIONS REGARDING CORPORATE GOVERNANCE OF THE REORGANIZED DEBTORS ........................................................................ 44 |
| | A. | Corporate Action .................................................................................. 44 |
| | B. | Certificates of Incorporation and Bylaws ........................................... 45 |
| | C. | Directors and Officers of the Reorganized Debtors ........................... 46 |
| | D. | Consummation Of The Plan Pursuant To Bankruptcy Code Section 1129 ........ 47 |
| VII. | | CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ............... 47 |
| VIII. | | EFFECTS OF PLAN CONFIRMATION ................................................. 48 |
| | A. | Vesting and Liens. ............................................................................... 48 |
| | B. | Releases and Discharges ...................................................................... 48 |
| | C. | Discharge and Injunction ..................................................................... 49 |
| | D. | Term of Injunction or Stays ................................................................. 51 |
| | E. | Exculpation ......................................................................................... 51 |
| | F. | Release by the Debtors ........................................................................ 51 |
| IX. | | ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN .......................................................................................... 53 |
| | A. | Liquidation Under Chapter 7 ............................................................... 53 |
| | B. | Alternative Plan of Reorganization ..................................................... 53 |
| X. | | CONCLUSION AND RECOMMENDATION ........................................... 54 |

EAST\42806146.9

## EXHIBITS

A.      Plan of Reorganization

B.      Organizational Chart

C.      Term Sheet

D.      Liquidation Analysis

E.      Financial Projections

Note: To the extent that the foregoing Exhibits are not annexed to this Disclosure Statement, such Exhibits will be filed with the Bankruptcy Court in the Plan Supplement.

## DISCLOSURE STATEMENT WITH RESPECT TO PLAN OF
## REORGANIZATION OF TITLEMAX HOLDINGS LLC, ET AL.

On April 20, 2009 the Debtors commenced these cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Georgia (the "Bankruptcy Court").  The Debtors' cases are captioned "In re TitleMax Holdings, LLC, et al.,", and are jointly administered under case number 09-40805.  The Debtors' cases were assigned to Judge Lamar W. Davis, Jr.  The Debtors submit this third amended disclosure statement (the "Third Amended Disclosure Statement") for the third amended plan of reorganization (the "Third Amended Plan") of TitleMax Holdings, LLC and its affiliated debtors and debtors in possession (collectively, the "Debtors" or "TitleMax") pursuant to Bankruptcy Code section 1125, for use in the solicitation of votes on the Plan.  A copy of the Plan is annexed hereto as Exhibit A of this Disclosure Statement.  This Disclosure Statement and the other documents described herein are being furnished by the Debtors to their Creditors and the Holders of Interests.

Except as otherwise provided herein, capitalized terms not otherwise defined in this Disclosure Statement have the meanings ascribed to them in the Plan.  Unless otherwise noted herein, all dollar amounts provided in this Disclosure Statement and in the Plan are given in United States dollars.

This Disclosure Statement sets forth certain information regarding the Debtors' prepetition operating and financial history and the need to seek chapter 11 protection.  This Disclosure Statement also describes terms and provisions of the Plan, certain effects of confirmation of the Plan, and the manner in which distributions will be made under the Plan.  In addition, this Disclosure Statement discusses the confirmation process and the voting procedures that Holders of Claims entitled to vote under the Plan must follow for their votes to be counted.

EAST\42806146.9

The following introduction is qualified by the Plan and the more detailed information and financial statements contained in this Disclosure Statement.

## I.   <u>INTRODUCTION</u>

### A.   <u>Overview of the Debtors' Business</u>

Mr. Tracy Young, the Debtors' founder, chief executive officer and sole Holder of the Debtors' Interests, established TitleMax in 1998. Mr. Young founded TitleMax in order to offer credit to consumers without access to traditional credit sources, despite owning their vehicle free and clear. The business model works by lending against the value of that person's vehicle. In 1998, Mr. Young opened stores in Columbus, Georgia, Phenix City, Alabama and Savannah, Georgia. From those humble beginnings, TitleMax grew rapidly and by the end of 2002 was operating approximately sixty (60) stores.

In 2003, the Debtors were able to secure a credit line with SunTrust Bank which afforded more rapid growth. Following that loan and a consolidation of all offices into a unified brand and a single parent company, the Debtors began a period of rapid expansion, growing today to operate approximately 550 stores in 8 states while employing over 1,800 people. The Debtors have over 225,000 customers across the southeastern United States. The corporate headquarters is located in Savannah, Georgia. Currently, the Debtors total assets are approximately $301 million while their liabilities are $183 million.

The Debtors are a leader in the title lending industry, possessing a business model unique to the industry. The Debtors focus exclusively on automotive and motorcycle (collectively, "<u>Vehicles</u>") title lending and 100% of their receivables are collateralized by first liens on Vehicles. The Customer Loan origination process takes approximately forty-five (45) minutes to complete. Generally, a customer brings their Vehicle, with a lien-free title, to the Debtors and the Vehicle is used as collateral for the Customer Loan. The customer fills out an application

and his or her Vehicle is appraised by an employee of the Debtors. Using the appraised value of the Vehicle, and based upon the customer's need, the Debtors will lend up to 80% of the appraised value of a Vehicle.

The Customer Loans range from approximately $100 to $5,050 depending upon, among other things, applicable state regulations and the value of the underlying collateral. The Debtors do not check or lend based on a customer's credit score and, in the event that a customer defaults under the terms of his or her Customer Loan, their credit score is not affected. In addition, the Debtors do not require their customers to either purchase or maintain collision insurance on the Vehicle being used as collateral. Significantly, the Debtors provide Customer Loans at interest rates as much as fifty percent (50%) below the interest rates charged by their competitors.

After completion of the required documentation, a customer leaves one of the Debtors' stores possessing a check for the full amount of the Customer Loan while also retaining the use of his or her Vehicle, except when the Vehicle is a motorcycle. When the origination process is completed, the title is sent to the applicable department of motor vehicles to record the Debtors as the first lien holder. Upon repayment of the customer loan account (the "Customer Loan Account") with the Debtors, the title to the customer's automobile is returned to the customer.

The success of the Debtors' business is attributable to several factors including, but not limited to: (i) the Debtors charge as much as fifty percent (50%) below the interest rates charged by their competitors; (ii) the Debtors employ a highly motivated and well trained sales force that accurately judge the appropriate amount of the Customer Loan; and (iii) the Debtors have highly visible locations and brand recognition. The Debtors believe that their business model will result in continued success. In fact, absent the bankruptcy process and refinancing issues, the Debtors would anticipate growing at a rate of ten (10) stores per month.

EAST\42806146.9

Certain of the Debtor entities, the CheckMax entities, relate to the Debtors' prior involvement in the deferred presentment industry and are currently inactive. The Debtors no longer have deferred presentment operations and no longer operate any CheckMax stores.

### B.       Overview of the Debtors' Corporate Structure

The Debtors operate in eight states. TitleMax Holdings LLC ("Holdings") is the parent company and owns all the stock of its operating company subsidiaries. The Debtors have formed separate corporations related to operations in each state in which the Debtors transact business, but most administrative operations are handled at the corporate headquarters in Savannah, Georgia. The organizational chart attached hereto as Exhibit B (the "Organizational Chart"), illustrates the relationship of the various subsidiary corporations and their place of incorporation.

As mentioned previously, the Debtors employ approximately 1,800 individuals. The Debtors provide their employees with a variety of benefits, including a health reimbursement plan to eligible employees, a matching contribution to 401(k) plans, and paid vacation for eligible employees.

Prepetition, Mr. Young was the chief executive officer and sole equity holder of the Debtors. John Robinson served as the president.

### C.       Events Leading to the Chapter 11 Cases

On April 20, 2007 the Debtors entered into the Prepetition Credit Agreement, among the Debtors, as borrowers, Merrill Lynch Mortgage Capital Inc., as both agent (in such capacity, together with its successors in interest in such capacity, the "Agent") and lender, and Fortress Credit Funding I LP, Fortress Credit Funding III LP, and Fortress Credit Opportunities I, LP ("Fortress," and, together with Merrill Lynch Mortgage Capital Inc. in its capacity as the Agent, the "Secured Lenders").

EAST\42806146.9

The maximum amount of the loan facility (the "Loan Facility") under the Prepetition Credit Agreement was $255,000,000, of which $225,000,000 comprised the Tranche A maximum amount ("Tranche A Maximum"), and $30,000,000 the Tranche B maximum amount ("Tranche B Maximum"). The Debtors paid interest on Tranche A advances at one-month LIBOR plus a 2.50% margin and on Tranche B advances at one-month LIBOR plus a 10% margin.

The Prepetition Credit Agreement had a scheduled maturity date of April 20, 2009 (the "Maturity Date"), at which time the loan was due in full. The Debtors spent the months leading up to the Maturity Date seeking to refinance the Prepetition Credit Agreement either with the Secured Lenders or by finding new lenders. Despite retaining an investment bank to aid in these efforts, the Debtors were ultimately unable to refinance their outstanding indebtedness prior to the Maturity Date. The Debtors paid a $1.0 million fee to the Secured Lenders on April 7, 2009, in order to continue negotiations related to a term sheet proposed by the Secured Lenders with terms materially worse for the Debtors. Despite these terms, the parties were unable to reach an agreement prior to the Maturity Date.

D.    **Events During the Chapter 11 Cases**

1.    The Filing of the Chapter 11 Petitions and First-Day Motions.

On the Petition Date, the Debtors each filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Since that time, the Debtors have continued in the management and operation of their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. On or directly following the Petition Date, the Debtors also filed the following "first-day" motions and applications (the "First-Day Motions"):

(a)    Motion for Order Directing Joint Administration;

(b)    Motion Of The Debtors For Interim And Final Orders

EAST\42806146.9

(I) Prohibiting Utilities From Altering, Refusing Or Discontinuing Service, (II) Deeming The Utility Companies Adequately Assured Of Future Performance; And (III) Establishing Procedures For Determining Requests For Additional Adequate Assurance;

(c)     Motion For An Order Granting Extension Of Time To File Schedules And Statements of Financial Affairs;

(d)     Motion Of Debtors Pursuant To 11 U.S.C. §§ 105(a) And 363(b) For An Order Authorizing Payment Of Prepetition (I) Wages, Salaries And Other Compensation Of Employees, (II) Employee Medical And Similar Benefits, (III) Reimbursable Employee Expenses, And (IV) Other Miscellaneous Employee Expenses And Benefits;

(e)     Motion Of The Debtors For Order Pursuant To 11 U.S.C. §§ 105(a) And 331 Establishing Procedures For Interim Compensation And Reimbursement Of Expenses Of Professionals;

(f)     Motion Of Debtors For Order Authorizing (I) Continued Use Of Existing Cash Management System, (II) Maintenance Of Existing Bank Accounts, (III) Continued Use Of Existing Checks And Business Forms, And (IV) Waiving Investment And Deposit Requirements Of 11 U.S.C. § 345(b);

(g)     Application For Order Pursuant To 11 U. S. C. §§ 327(a) And 328(a) And Federal Rule Of Bankruptcy Procedure 2014 Authorizing Employment And Retention Of Stephens, Inc. As Investment Banker To The Debtors Nunc Pro Tunc to the Petition Date;

(h)     Motion Of The Debtors For Order Authorizing And Approving The Appointment Of Epiq Bankruptcy Solutions, LLC As Noticing, Claims, And Balloting Agent For The Bankruptcy Court;

(i)     Application For Order Pursuant To 11 U. S. C. § 327 And Federal Rule Of Bankruptcy Procedure 2014 Authorizing Debtors In Possession To Retain Gray & Pannell LLP As Counsel To The Debtors In Possession Nunc Pro Tunc to the Petition Date;

(j)     Application For Order Pursuant To 11 U. S. C. §§ 327(a) And 328(a) Authorizing Employment And Retention Of Phoenix Management Services, Inc. As Financial Advisors

EAST\42806146.9

To The Debtors; and

(k)     Application For Order Pursuant To 11 U. S. C. § 327 And Federal Rule Of Bankruptcy Procedure 2014 Authorizing Debtors In Possession To Retain DLA Piper LLP (US) As Counsel To The Debtors In Possession Nunc Pro Tunc To The Petition Date.

(l)     The majority of the First-Day Motions were procedural in nature and related to maintaining business operations in the framework of chapter 11.   The First-Day Motions were subsequently approved over the course of several hearings before the Court.

2.      Formation of the Committee.

On April 29, 2009, the Office of the United States Trustee appointed a seven (7) member Committee.  The Committee members are:

(a)     Gregory M. Parker;

(b)     National Retail Properties;

(c)     William Dascombe;

(d)     TechDiscovery, LLC;

(e)     Nuvox;

(f)     Richard J. Greco, MD; and

(g)     Demeer Dana & Froehle.

On June 18, 2009, the Court authorized the employment of Hunter, Maclean, Exley & Dunn, P.C. as counsel to the Committee.

3.      Cash Collateral Motion.

In addition to the First-Day Motions, on the Petition Date, the Debtors filed their motion for entry of interim and final orders authorizing use of cash collateral and granting adequate protection to the Secured Lenders (the "Cash Collateral Motion").   For an extended period following the Petition Date, the Debtors and the Secured Lenders engaged in litigation and

EAST\42806146.9

discovery regarding cash collateral usage and the provisions of adequate protection to the Secured Lenders.  As of the filing of this Third Amended Disclosure Statement and Third Amended Plan, the use of cash collateral has been extended pursuant to an order of this Court, dated January 8, 2010 [Dkt. 408], which extends cash collateral use through and including March 31, 2010.  At this stage, it is anticipated that the parties will agree to a stipulation that will result in cash collateral use through the earlier of the Effective Date of the Plan or April 15, 2010.

4.    <u>Bar Date Motion</u>

On June 17, 2009, the Debtors filed a motion seeking to establish various bar dates and procedures related thereto.  On August 14, 2009, the Court entered an order establishing a general bar date of October 13, 2009 for creditors and October 30, 2009 for governmental units. In addition, the Debtors amended their schedules and provided affected creditors with an additional forty-five (45) days notice in which to file proofs of claim by separate notice.

5.    <u>Exclusivity Motion.</u>

On July 17, 2009, the Debtors filed a motion to extend their exclusive periods in which to file and solicit votes on a plan of reorganization (the "<u>Exclusivity Motion</u>").  Pursuant to Bankruptcy Code section 1121, the Debtors' exclusive periods in which to file and solicit a plan terminated on August 18, 2009 and October 17, 2009, respectively.  The Exclusivity Motion sought to extend the exclusive periods through an additional four (4) months.

The Secured Lenders filed an objection to the Exclusivity Motion requesting that it be denied.  On August 17, 2009, the Court entered an order granting the Exclusivity Motion and extended the Debtors' exclusive periods in which to file and solicit a plan an additional four months.  The order was amended by order dated August 19, 2009.

On January 28, 2010, the Debtors filed their *Second Motion to Extend Exclusivity Period for Filing a Chapter 11 Plan and Disclosure Statement* (the "<u>Second Exclusivity Motion</u>") [Dkt.

428].  By agreement with the Secured Lenders, the Debtors have sought to have the hearing on that motion adjourned and anticipate that they will enter into a stipulation with the Secured Lenders extending the exclusive periods in which to solicit acceptances of the Plan through the earlier of the Confirmation Date or April 15, 2010.

      6.    <u>Estimation Motion.</u>

On October 22, 2009, the Debtors filed a motion seeking authority to estimate two significant litigations in which the Debtors are defendants, which motion was heard and granted at the hearing on January 5, 2010.  The motion seeks to establish procedures to allow for the estimation of the litigation claims for all purposes.

      7.    <u>Unexpired Lease Motions.</u>

On July 17, 2009, the Debtors filed a motion to extend their time to assume or reject unexpired leases (the "<u>Extension Motion</u>").  Pursuant to Bankruptcy Code section 364, the Debtors time in which to assume or reject unexpired leases expired on August 18, 2009.  By the Extension Motion, the Debtors sought to extend this period until November 16, 2009.  On September 24, 2009, the Court entered an order granting the Extension Motion.

On November 16, 2009, the Debtors filed six (6) omnibus motions to assume over five hundred (500) unexpired leases, which motions were heard on January 5, 2009.  The Debtors made appropriate cure payments and assumed the leases of all operating stores.  A significant aspect of the Debtors' business is leasing and developing stores and the Debtors have over 550 leases.  The Debtors reviewed the leases, negotiated terminations with landlords and ultimately saved considerable estate funds by avoiding substantial rejection damages claims.

### E.    Classification and Treatment of Claims and Interests Under the Plan

Under chapter 11 of the Bankruptcy Code, only holders of claims and interests that are "impaired" are entitled to vote to accept or reject the Plan. The Bankruptcy Code further provides that a Class that is left unimpaired under the Plan is deemed to have accepted the Plan. The Bankruptcy Code also provides that a class that receives no distribution under the Plan is deemed to have rejected the Plan. To become effective, the Plan must be accepted by certain classes of claims and confirmed by the Bankruptcy Court. For a discussion of these matters, see Article V - Statutory Requirements for Confirmation of the Plan of Reorganization.

Certain Classes of Claims are impaired under the Plan and, accordingly, are entitled to vote on the Plan. The Debtors are seeking votes to accept the Plan from Holders of Claims in these Classes. While the Interests are impaired under the Plan, the Interests are held by an Insider and thus these votes on the Plan will not be counted. For a description of the Classes of Claims and Interests and their treatment under the Plan, see Article III – The Plan of Reorganization.

Estimated Claim amounts for certain Classes are based upon a preliminary analysis by the Debtors and their Professionals of the corporate records and capital structure of the Debtors. There can be no assurance that these estimated amounts are correct. The following treatments are possible only if the Plan is approved and the Debtors estimate of the Claims is determined to be valid by the Bankruptcy Court. The timing of distributions under the Plan, if any, is subject to conditions and determinations described in later sections of this Disclosure Statement.

Each Class of Claims and Interests, except Administrative Claims, Priority Tax Claims and Trustee Fees are placed in the following Classes and will receive the following treatment under the Plan:

EAST\42806146.9

**Summary of Classification
and Treatment of Claims and
Interests Under the Plan**

| Class Description | Estimated Amount of Allowed Claims | Impaired | Treatment |
|---|---|---|---|
| **Class 1 – Secured Lender Claims** | **$149,493,250** | Yes | On the Effective Date, the Secured Lenders will receive the New Lender Claim, estimated at this time to be approximately $149,493,250 as of the Effective Date, which will be treated in accordance with the Term Sheet. The general terms and provisions of the Term Sheet will be incorporated into the New Credit Agreement and such other related documents necessary to effect and implement the New Credit Agreement. |
| **Class 2 – Unsecured Priority Claims** | **$100,000** | No | Holders of Allowed Unsecured Priority Claims will be paid in Cash in full on the later of (i) the Effective Date; (ii) pursuant of the terms of the Debtors' obligations to the Holder of such Claim; or (iii) as may be agreed by the Debtors and the Holder of such Claim. |
| **Class 3 – Subordinated Noteholder Claims** | **$4,700,000** | Yes | All Holders of Allowed Subordinated Noteholder Claims shall receive payment in full through the New Subordinated Notes. |
| **Class 4 – Unsecured Nonpriority Claims (General Unsecured Claims)** | **$2,500,000** | No | All Holders of Allowed Unsecured Nonpriority Claims will be paid the full amount of their Allowed Claims in Cash, which amount includes interest at the contract rate, if applicable, or at the Georgia postjudgement interest rate where no contract exists (as established by O.C.G.A. § 7-4-12) which is the Prime Rate plus three percent, as such amount has accrued between the Petition Date and the date on which such Allowed Unsecured Nonpriority Claim may actually be paid in full, either (i) on the Effective Date; (ii) pursuant to the terms of the Debtors' obligation to the Holder of such Claim; (iii) as may be agreed by the Debtors and the Holder of such Claim; or (iv) as otherwise ordered by the Bankruptcy Court following notice and a hearing. |
| **Class 5 – Litigation Claims** | **Unknown** | No | Holders of Allowed Litigation Claims will receive payment in full in Cash if their Claim is deemed Allowed. |

| Class Description | Estimated Amount of Allowed Claims | Impaired | Treatment |
|---|---|---|---|
| **Class 6 – Interests** | N/A | Yes | The Holder of the Interests will retain one hundred percent (100%) of the Interests. |

## II.    PLAN OVERVIEW

### A.    Introduction

The following is a brief overview of the Plan.  It is qualified by reference to the Plan itself, a copy of which is annexed hereto as Exhibit A.  In addition, for a more detailed description of the terms and provisions of the Plan, see Article III - The Plan Of Reorganization.

The Plan is the result of negotiations among the Debtors, the Secured Lenders, and the Committee.  The Plan contemplates a restructuring that has, among other things, five (5) major components:

1.    Restructuring Prior Secured Indebtedness.  The total amount due and owing the Secured Lenders as of the Effective Date will be the New Lender Claim which the Debtors estimate will be approximately $149,493,250 as of the Effective Date, which will be treated in accordance with the Term Sheet, a copy of which is attached hereto as Exhibit C.  The Term Sheet will be embodied in the New Credit Agreement and related documents which will be filed with the Plan Supplement.

2.    Unsecured New Subordinated Notes.  The total amount due and owing the Holders of the Subordinated Notes will be consolidated into the New Subordinated Notes which the Reorganized Debtors will issue on the Effective Date.  The New Subordinated Notes capitalize unpaid interest, modify the interest rate and adjust the timing of repayment.

3.    Distributions to Unsecured Nonpriority Creditors.  The Debtors estimate that unsecured creditors will receive payment in full, with interest at the Prime Rate plus three percent per annum (as established by O.C.G.A. § 7-4-12), in Cash, on the Effective Date.

4.    Litigation Claims.  The Litigation Claims will be paid in full, in Cash, if they are deemed Allowed.

5.    New Subordinated Financing.  The Debtors will be permitted to raise subordinated debt, which shall be subordinate to the New Lender Claim. The terms of the subordinated debt will be consistent with the Term Sheet

and the New Credit Agreement and contain other customary provisions. The feasibility of the Plan does not depend upon the new subordinated debt and no such debt is contemplated in the attached financial projections.

All Claims, liens, charges and other encumbrances will be paid as set forth in the Plan out of the profits from the Debtors' ongoing business operations. Creditors will be paid as set forth in the Plan and as summarized above. The Debtors submit that the Plan will afford Holders of Claims and Interests a superior return over a liquidation of the Debtors under chapter 7 of the Bankruptcy Code.

## B.    Mechanics of Distribution

Under the Plan, Holders of all Allowed Claims will receive the distributions or other treatments provided under the Plan on the Effective Date or as soon as practicable thereafter. The Effective Date will occur no earlier than the date of the satisfaction of each of the conditions precedent to occurrence of the Effective Date of the Plan, unless waived. See Article III – Section O.

No distributions will be made with respect to any Claim to the extent it is a Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim. Distributions to each holder of a Disputed Claim, to the extent that such Claim ultimately becomes an Allowed Claim, will be made in accordance with the provisions of the Plan governing the class of Claims in which such Claim is classified. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing the Disputed Claim becomes a Final Order, a distribution will be made to the holder of such Claim, consisting of any payment or property that would have been distributed to such holder if the Claim had been allowed on the Effective Date, without any interest thereon.

## C.    Summary of Confirmation Requirements

EAST\42806146.9

Under the Bankruptcy Code, only classes of claims or interests that are "impaired" are entitled to vote to accept or reject the Plan.  The Bankruptcy Code requires, as a condition to confirmation of a consensual plan of reorganization, that each impaired class of claims or interests accepts the plan.  A class of creditors is deemed to accept a plan if the holders of at least two-thirds in dollar amount, and more than one-half in number, of those creditors that actually cast ballots, vote to accept such plan.  A class of interest holders is deemed to accept a plan if the holders of at least two-thirds in amount of the allowed interests that actually cast ballots vote to accept such plan of reorganization.

Any Claims arising from the rejection of executory contracts and unexpired leases are treated under the Bankruptcy Code as if they arose before the filing of the chapter 11 petition.

Any Claim or Interest in an impaired Class that is subject to a pending objection or is scheduled as unliquidated, disputed or contingent (absent the filing of a proof of claim), is not entitled to vote unless the holder of such Claim or Interest has obtained an order of the Bankruptcy Court temporarily allowing the Claim or Interest for the purpose of voting on the Plan.

### D.    <u>Voting Instructions and Deadline</u>

This Disclosure Statement describes the background of the Debtors and the significant events leading up to and following the filing of the Chapter 11 Cases on the Petition Date.  It summarizes the major events that have taken place during the Debtors' Chapter 11 Cases and describes the Plan, which divides Creditor Claims and Interests into Classes and provides for the treatment of Allowed Claims and Interests.

### 1.    <u>General Information</u>

Under the Bankruptcy Code, certain Classes of Creditors are deemed to accept or reject the Plan and the vote of these Classes will not be solicited.

EAST\42806146.9

2.      Unimpaired Classes Are Deemed to Accept the Plan and Do Not Vote

If a Creditor holds Claims included within a Class that is not impaired under the Plan, under Bankruptcy Code section 1126(f), the Creditor is deemed to have accepted the Plan with respect to such Claims and its vote of such Claims will not be solicited.  Classes 2, 4 and 5 are unimpaired Classes under the Plan.

3.      Claims Which Are Not Allowed.

The Bankruptcy Code provides that only the Holders of Allowed Claims are entitled to vote on the Plan.  A Claim to which an objection has been filed is not an Allowed Claim unless and until the Bankruptcy Court rules on the objection and allows the Claim.  If the Bankruptcy Court has not ruled on the objection, but the Holder of a Claim wishes to vote, the holder of the Claim may petition the Bankruptcy Court to estimate its claim for voting purposes under Bankruptcy Rule 3018(a).  Consequently, although Holders of Claims subject to a pending objection will receive ballots, their votes will not be counted unless the Bankruptcy Court, prior to the hearing on Confirmation, rules on the objection and allows the Claim or, on proper request under Bankruptcy Rule 3018(a) prior to the hearing on Confirmation, temporarily allows the Claim in an amount which the Bankruptcy Court deems proper for the purpose of voting on the Plan.

4.      Voting and Record Date

If a Creditor holds a Claim classified in a voting Class of Claims under the Plan, the Creditor's acceptance or rejection of the Plan is important and must be in writing and filed on time.  The record date for determining which creditors may vote on the Plan is March 12, 2010. How to Vote.  IN ORDER FOR A VOTE TO BE COUNTED, THE BALLOT MUST BE PROPERLY COMPLETED AS SET FORTH ABOVE AND IN ACCORDANCE WITH THE

VOTING INSTRUCTIONS ON THE BALLOT, AND RECEIVED NOT LATER THAN [_____], 2010 AT 5 P.M. PREVAILING EASTERN TIME (THE "VOTING DEADLINE") BY THE BALLOTING AGENT AS SET FORTH ON THE BALLOT.

Ballots.  Creditors must use only the ballot or ballots sent to them with this Disclosure Statement. If a Creditor has Claims in more than one Class, it should receive multiple ballots.  IF A CREDITOR RECEIVES MORE THAN ONE BALLOT THE CREDITOR SHOULD ASSUME THAT EACH BALLOT IS FOR A SEPARATE CLAIM AND SHOULD COMPLETE AND RETURN ALL OF THEM.

> **IF A CREDITOR IS A MEMBER OF A VOTING CLASS AND DID NOT RECEIVE A BALLOT FOR SUCH CLASS, OR IF SUCH BALLOT IS DAMAGED OR LOST, OR IF A CREDITOR HAS ANY QUESTIONS CONCERNING VOTING PROCEDURES, CALL EPIQ BANKRUPTCY SOLUTIONS, LLC AT (646) 282-2400 DURING BUSINESS HOURS.**

If a Creditor or Interest Holder has any questions about the procedure for voting its Claim or the packet of materials that it received, please contact:

> Epiq Bankruptcy Solutions, LLC
> Attn:  TitleMax Ballot Processing Center
> FDR Station, P.O. Box 5014
> New York, New York 10150-5014
> Tel:  (646) 282-2400
> Email:  processing@epiqsystems.com

E.    **The Confirmation Hearing**

The Debtors will send notice to all Holders of the date on which it will request that the Court confirm the Plan (the "Confirmation Hearing").  All Holders will have an opportunity to object to the Plan, if such Holder has not waived such right.  If the Plan is confirmed by the Bankruptcy Court, it will be binding on all Claim and Interest Holders regardless of whether an individual Claim or Interest Holder has supported or opposed the Plan.

F.      **Interpretation of Terms**

Each definition in the Disclosure Statement and in the Plan includes both the singular and the plural, and references in the Disclosure Statement include the masculine and feminine where appropriate.  Headings are for convenience or reference and shall not affect the meaning or interpretation of the Disclosure Statement.

## III.    THE PLAN OF REORGANIZATION

THIS SECTION PROVIDES A SUMMARY OF THE STRUCTURE, CLASSIFICATION, TREATMENT AND IMPLEMENTATION OF THE PLAN, AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN, WHICH IS ATTACHED TO THIS DISCLOSURE STATEMENT AS EXHIBIT A.

A.      **Classification and Treatment of Claims and Interests Under the Plan**

The Claims against the Debtors are divided into Classes, according to their seniority and other criteria.  If the Plan is confirmed by the Bankruptcy Court and then consummated: (1) the Secured Lenders' Claim will be restructured and consolidated into the New Lender Claim; and (2) Holders of other Claims and Interests will receive distributions ranging from full recovery immediately to payments over a period of time.  The Classes of Claims and Interests in the Debtors, and the funds and other property to be distributed under the Plan, are described below.

THE DEBTORS BELIEVE THAT THE PLAN AFFORDS CREDITORS THE POTENTIAL FOR THE GREATEST REALIZATION OF THE VALUE OF THE DEBTORS' ASSETS.

B.      **Treatment of Administrative Claims, Priority Tax Claims and Trustee Fees**

Certain Claims need not be classified under a plan pursuant to the Bankruptcy Code, including Administrative and Priority Tax Claims.

1.      Administrative Claims

-19-

The Plan defines Administrative Claims as a Claim for payment of an administrative expense or cost of a kind specified in Bankruptcy Code section 503(b) and referenced in Bankruptcy Code sections 507(a)(2) or 507(b) including, without limitation, the actual, necessary costs and expenses of preserving the Estates and operating the businesses of the Debtors, including wages and taxes incurred by the Debtors' Estates and allowed as administrative expenses, salaries, or commissions for services rendered after the commencement of these Chapter 11 Cases, compensation for legal and other services and reimbursement of expenses allowed or awarded under Bankruptcy Code sections 328, 330(a) or 331.

Holders of Allowed Administrative Claims will receive Cash equal to the unpaid portion of such Allowed Administrative Claim that has come due for payment under any applicable order or law, unless otherwise agreed to by the holder of an Allowed Administrative Claim or order of the Bankruptcy Court, as soon as practicable after the later of: (a) the Effective Date, (b) the date on which such Person becomes the holder of an Allowed Administrative Claim; or (c) the date or dates when that Claim is payable by its terms, consistent with past practice and in accordance with past terms.

There are four (4) different types of Allowed Administrative Claims, each of which receives treatment as follows:

    a.    Liabilities or obligations incurred by the Debtors in the ordinary course of its business during the Chapter 11 Cases to vendors or trade creditors, shall be paid or performed by the Debtors, in the ordinary course of business in accordance with the terms and conditions of any agreements, orders, or applicable law relating thereto;

    b.    Allowed Professional Fee Claims, including those amounts held back pursuant to an Order of the Bankruptcy Court, shall be paid in full in Cash by order of this Court;

-20-

      c.      Include all fees and charges assessed against the Estates under chapter 123 of title 28, United States Code. These fees will be paid in Cash in full within ten (10) days of the Effective Date; and

      d.      Wage obligations, including commissions, to employees which have accrued during the postpetition period.

The Debtors estimate that the aggregate amount of unpaid Allowed Administrative Claims as of the Effective Date will total approximately $4.0 million, not including ordinary course wages and payments.

### 2.    TY Debt Claim

The TY Debt Claim will be repaid in full concurrently, but not before, with the final, full repayment of the New Lender Claim, in Cash. The TY Debt Claim is in the amount of $3,200,000 and will accrue interest at the Prime Rate plus three percent per annum. The TY Debt Claim shall be unsecured and subject to a subordination agreement with respect to the New Lender Claim.

### 3.    TitleMax Aviation Claims

The TitleMax Aviation Claims constitute claims for services and expenses incurred by TitleMax Aviation postpetition. The TitleMax Aviation Claims will be repaid in full concurrently, but not before, with the final, full repayment of the New Lender Claim, in Cash. The TitleMax Aviation Claims shall be unsecured and subject to a subordination agreement with respect to the New Lender Claim.

The Debtors estimate that the TitleMax Aviation Claims will total approximately $2,500,000

### 4.    TY Tax Claims

In the ordinary course of business, the Debtors would reimburse the LLC Member (or Holder of the Interests) related to tax claims arising from the operation of the Debtors'

businesses.  The Reorganized Debtors have estimated for such claims in their Financial Projections, attached hereto as Exhibit E.

The Debtors estimate that, for 2009, those claims will be approximately $31.5 million and propose to reimburse the LLC Member for such amounts, provided, however, that any payment for such tax reimbursement will be paid following the Effective Date.

> 5.    Priority Tax Claims

On, or as soon as reasonably practicable after the later of (i) the Effective Date; or (ii) the date on which a Priority Tax Claim becomes an Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall receive on account of such Allowed Priority Tax Claim, in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Priority Tax Claim, (i) Cash equal to the unpaid portion of such Allowed Priority Tax claim, or (ii) such other treatment as to which the Allowed Priority Tax Claim Holder and the Reorganized Debtors shall have agreed in writing.

The Debtors estimate that Allowed Priority Tax Claims will total approximately $100,000.

> 6.    US Trustee Fees

In accordance with the Bankruptcy Code and the United States Code, all Trustee Fees will be paid in full by the Reorganized Debtors within ten (10) days of the Effective Date.

**C.    Treatment of Classified Claims and Interests**

The Plan provides for certain Claims and Interests by Class, as provided in Bankruptcy Code sections 1122 and 1123(a)(1).  The Classes established by the Plan, and the treatment of each Class, are set forth below.  The Plan provides for certain general treatment provisions which, in addition to other generally applicable provisions (including distribution provisions

EAST\42806146.9

described in a later section of this Disclosure Statement), apply to the treatment of all Claims under the Plan.

The Plan will not provide any distributions on account of a Claim to the extent that such Claim has been disallowed, released, withdrawn, waived, settled, or otherwise satisfied or paid as of the Effective Date, including without limitation, payments by third party guarantors, sureties, or insurers, whether governmental or nongovernmental, even if made after the Effective Date.

1.   Class 1:  Secured Lender Claims

On the Effective Date, the Secured Lenders will receive the New Lender Claim , estimated at this time to be approximately $149,493,250 as of the Effective Date, which will be treated in accordance with the Term Sheet attached hereto as Exhibit C.  The general terms and provisions of the Term Sheet will be incorporated into the New Credit Agreement and such other related documents necessary to effect and implement the New Credit Agreement.

2.   Class 2:  Unsecured Priority Claims

All Holders of Allowed Unsecured Priority Claims will be paid in Cash in full on or as soon as reasonably practicable on the later of (i) the Effective Date; (ii) pursuant of the terms of the Debtors' obligation to the Holder of such Claim; or (iii) as may be agreed by the Debtors and the Holder of such Claim.

The Debtors estimate that the Class 2 Unsecured Priority Claims will total approximately $100,000.

3.   Class 3:  Subordinated Noteholder Claims

All Holders of Allowed Subordinated Noteholder Claims shall receive payment in full through the New Subordinated Notes.

The Debtors estimate that the Class 3 Subordinated Noteholder Claims will total approximately $4,700,000.

EAST\42806146.9

4.    Class 4:  Unsecured Nonpriority Claims (General Unsecured Claims)

All Holders of Allowed Unsecured Nonpriority Claims will be paid the full amount of their Allowed Claims in Cash, which amount includes interest at the contract rate, if applicable, or at the Prime Rate plus three percentage points per annum (as established by O.C.G.A. § 7-4-12), as such amount has accrued between the Petition Date and the date on which such Allowed Unsecured Nonpriority Claim may actually be paid in full, either (i) on the the Effective Date; (ii) pursuant to the terms of the Debtors' obligation to the Holder of such Claim; (iii) as may be agreed by the Debtors and the Holder of such Claim; or (iv) as otherwise ordered by the Bankruptcy Court following notice and a hearing.

The Debtors estimate that the Class 4 Unsecured Nonpriority Claims (General Unsecured Claims) will total approximately $2,500,000.

5.    Class 5:  Litigation Claims

Holders of Allowed Litigation Claims will receive payment in full in Cash if their Claim is deemed Allowed.

The amount of Class 5 Litigation Claims is unknown.

6.    Class 6:  Interests

The Holder of the Interests will retain one hundred percent (100%) of the Interests.

**D.    Implementation of the Plan**

1.    Terms of the New Lender Claim

The total amount owing to the Secured Lenders on the Effective Date shall be consolidated into the New Lender Claim, which will be treated in accordance with the Term Sheet attached hereto as Exhibit C.  As part of the Plan Supplement, the Debtors will file the New Credit Agreement, which will incorporate the Term Sheet as well as such additional typical terms and conditions as negotiated and mutually agreed between the Debtors (exclusive of

EAST\42806146.9

TitleMax of Texas, LLC) and the Secured Lenders. The Debtors currently estimate that the principal amount of the New Lender Claim will be $149,493,250 as of the Effective Date.

### 2. Terms of the New Subordinated Notes

The New Subordinated Notes shall bear interest at the non-default rate of interest payable to the Holders of the Subordinated Notes prior to the Petition Date. All accrued interest as of the Effective Date shall be capitalized and shall bear interest at the greater of (i) the prepetition contract rate or (ii) 16% per annum. The LLC Member will issue a replacement guaranty to each Holder of the New Subordinated Notes to the same extent such Holder possessed a guaranty on behalf of the Subordinated Notes. So long as no default or event of default exists or is continuing with respect to the New Credit Agreement, interest on the New Subordinated Notes will be paid monthly, in arrears, beginning on the 15th day on the first month following the Effective Date. No principal amounts will be paid on the New Subordinated Notes until the maturity thereof. The New Subordinated Notes shall have a maturity date which is the date ninety (90) days after the maturity of the New Lender Claim. However, upon the full and final repayment of the New Lender Claim, in Cash, each Holder of the New Subordinated Notes shall have a thirty (30) day demand repayment option. As part of the Plan Supplement, the Debtors will file the New Subordinated Notes.

### 3. Payment of the Litigation Claims

The Debtors moved this Court for approval of a proceeding designed to estimate the amount of the Litigation Claims for purposes of voting and distribution. Subsequently the Debtors entered into still ongoing settlement negotiations related to the Litigation Claims. However a final determination of value as to the Litigation Claims is made, be it via this Court's determination pursuant to an estimation hearing, as a result of settlement, arbitration, or trial in any court of competent jurisdiction, the Debtors will pay the full amount, in Cash, of the

Litigation Claims. In recognition of this outstanding liability, the Debtors will maintain an accounting reserve equal to the estimated value of the Litigation Claims. The reserve will exist until the Litigation Claims have been settled or otherwise finally become Allowed Litigation Claims. At such time, payments will be made in Cash to Holders of Litigation Claims pursuant to the terms of any settlement or judgment in the respective litigations. Any such settlement will be subject to this Court's approval subject to Bankruptcy Rule 9019.

4.    Distributions on Account of Interests

The Holder of the Interests will retain one hundred percent (100%) of the Interests, subject to the distributions, payments and other covenants related to the Interests provided in the Term Sheet and the New Credit Agreement.

5.    New Capital

Following the Effective Date, the Debtors shall have the right to issue new Subordinated Debt, which shall be unsecured and subordinated in all respects to the New Lender Claim. The Subordinated Debt can only be issued pursuant to the Term Sheet and New Credit Agreement. The Reorganized Debtors have the right to issue new Equity Interests on the same terms under which they may incur Sub Debt. Such restrictions on the sale of Equity Interests shall not apply to a sale by Tracy Young of any or all of the now existing Equity Interests he currently holds, nor shall it apply to any Equity Interests purchased by John Robinson, III, pursuant to his employment contract.

**E.    Funding of the Plan**

The Debtors intend to implement the Plan with funds generated from operation of their businesses and the issuance of Subordinated Debt, if applicable.

**F.    Risk Factors in Connection with the Plan**

EAST\42806146.9

The Debtors believe that there are certain risk factors in connection with confirmation of the Plan including: (1) potential fluctuations in the Debtors' business forecasts resulting in reduced revenues; and (2) potential regulatory changes that may substantively affect the Debtors' postconfirmation operations.

### G.    Continued Corporate Existence

Each Debtor, except as specifically named below, shall continue to exist after the Effective Date as a separate legal entity, each with all the powers of a corporation, limited liability company or partnership, as applicable, under the laws of its respective jurisdiction of organization and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under applicable state law. On the Effective Date, CheckMax of Mississippi, Inc., CheckMax of Virginia, Inc., CheckMax of South Carolina, Inc., and CheckMax of Tennessee, Inc. shall be deemed dissolved and the Debtors shall provide appropriate notice to the relevant regulators and other agencies requiring notice.

On the Effective Date, all officers, directors, members and managers of the Debtors shall be reinstated with each Reorganized Debtor and the Debtors' charters shall be deemed to prohibit (i) the issuance of nonvoting equity securities, or (ii) an inappropriate distribution of voting power within the meaning of Bankruptcy Code section 1123(a)(6).

### H.    Post-Effective Date Compensation of Professionals

The Professionals employed by the Debtors shall be entitled to reasonable compensation and reimbursement of actual, necessary expenses for post-Effective Date activities, including the preparation, filing and prosecution of final fee applications, upon the submission of invoices to the Reorganized Debtors. Any time or expenses incurred in the preparation, filing and prosecution of final fee applications shall be disclosed by each Professional in its final fee application and shall be subject to approval of the Bankruptcy Court.

EAST\42806146.9

## I.      **Other Plan Provisions**

### 1.      Preservation of Rights of Action

In accordance with Bankruptcy Code section 1123(b), the Debtors may enforce any claims, rights and causes of action that it or the Estates may hold against any entity. These causes of action, except for those that are released herein or which may be released on or before the Effective Date by separate agreement, shall be preserved for the Reorganized Debtors after the Effective Date to the extent allowable under the Bankruptcy Code.

### 2.      Miscellaneous Matters

#### a.      Administrative Bar Date

The Plan provides for a "Bar Date," or the date by which certain Claims must be filed against the Debtors. Bar Date means, as applicable: (i) with respect to Claims arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan, thirty (30) days after the earlier of the date of the Bankruptcy Court order approving the Debtors' rejection of such Executory Contract or unexpired lease or the Confirmation Date; (ii) with respect to Professional Fee Claims, sixty (60) days after the Effective Date of the Plan or such other date set by the Court; and (iii) with respect to Administrative Claims other than Professional Fee Claims, thirty (30) days after the Effective Date of the Plan or such other date set by the Court.

#### b.      Further Authorization

The Debtors will be entitled to seek such orders, judgments, injunctions, and rulings from the Bankruptcy Court, in addition to those specifically listed in the Plan, as may be necessary to carry out the intentions and purposes and to give full effect to the provisions of the Plan. The Bankruptcy Court will retain jurisdiction to enter such orders, judgments, injunctions, and rulings.

EAST\42806146.9

c.      Satisfaction of Claims and Interests

Holders of Claims and Interests will receive the distributions provided for in the Plan, if any, in full settlement and satisfaction of all such Claims, and any interest accrued thereon, and all such Claims and Interests.

d.      Abandoned Property

The Plan provides that any and all property whose abandonment is or has been approved by the Bankruptcy Court pursuant to the Bankruptcy Code: (i) will remain abandoned forever; (ii) will not thereafter be deemed to be property of the Debtors, their Estates or any successor to the Debtors; (iii) will not at any time revest in the Debtors; and (iv) will not otherwise, whether by conveyance or otherwise, ever become the property of the Debtors or their Estates.

e.      Post-Effective Date Effect of Evidences of Claims or Interests

The Plan provides that notes, stock certificates, and other evidences of liens or Claims against or Interests in the Debtors will, effective upon the Effective Date of the Plan, represent only the right to participate in the distributions or rights, if any, contemplated by the Plan.

f.      Term of Stays

The Plan also provides that, except as otherwise provided in the Plan, all injunctions and the stays provided for in the Chapter 11 Cases, pursuant to Bankruptcy Code section 362, shall remain in full force and effect until the Effective Date.  Upon entry of the Confirmation Order, all Holders of Claims and Interests shall be enjoined from taking any action to interfere with the implementation and consummation of the Plan.

g.      Post-Confirmation Employment and Payment of Professionals

The Plan provides that, on and after the Confirmation Date, the Debtors may pay professionals for services to be performed after the Confirmation Date on a monthly basis

without prior approval of the Bankruptcy Court. Payments for services or expenses incurred prior to the Effective Date must, however, be disclosed to the Bankruptcy Court and will be subject to the Bankruptcy Court's final approval as reasonable. On motion and such notice as may be appropriate, the Bankruptcy Court will determine the reasonableness of such payments.

h.    Retention of Jurisdiction

The Plan provides that notwithstanding entry of the Confirmation Order or the Effective Date having occurred, the Bankruptcy Court will retain jurisdiction to the fullest extent permitted by law, including jurisdiction to enter any orders or to take any action specified in the Plan, and including, without limitation, the following: (i) to allow, disallow, reconsider (subject to Bankruptcy Code section 502(j) and the applicable Bankruptcy Rules), estimate, liquidate, classify, or determine any Claim against the Debtors, including Professional Fee Claims or other Claims for compensation or reimbursement; (ii) to hear and determine all Avoidance and Other Actions, as well as all Claims, adversary proceedings, applications, motions, and contested or litigated matters arising under the Bankruptcy Code or arising in or related to the Chapter 11 Cases that are filed or commenced before or after the Confirmation Date or pursuant to the Plan and to adjudicate and enforce claims or causes of action of the Debtors arising under the Bankruptcy Code or arising in or related to the Chapter 11 Cases, whether or not pending on the Confirmation Date; (iii) to resolve controversies and disputes regarding interpretation and implementation of the Plan; (iv) to enter orders in aid of or to interpret the Plan, including, without limitation, appropriate orders (which may include contempt or other sanctions) to enforce the Plan, and to protect the Debtors and any other entity having rights under the Plan as may be necessary to implement the Plan, to correct any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan; (v) to amend or modify the Plan as provided by applicable law;

(vi) to determine all questions and disputes regarding title to assets of the Debtors or of the Estates, as may be necessary to implement the Plan; (vii) to enforce and to determine actions and disputes concerning the releases contemplated by the Plan and to require Persons holding liens to release liens in compliance with the Plan; (viii) to fix the value of collateral in connection with determining Claims; (ix) to enter any order pursuant to Bankruptcy Code section 505 or otherwise to determine any tax of the Debtors, whether before or after the Confirmation Date, including to determine any and all tax effects of the Plan; (x) to hear and determine any action or controversy relating to Holders of Allowed Claims; (xi) to enter a final decree closing the Chapter 11 Cases; and (xii) to make such final administrative provisions for the Chapter 11 Cases as may be necessary or appropriate.

i.      Claims Arising from Certain Judgments

A Claim that arises in favor of an entity as a result of a judgment against the Debtors for the recovery of money or property from that entity or avoiding the entity's interest in property, must be filed within thirty (30) days after the later of (i) the date the judgment becomes final or (ii) the mailing of notice of the Confirmation.

j.      Retention and Enforcement of Claims

The Plan provides that the Reorganized Debtors will retain and may enforce all claims, interests, causes of action, and Avoidance and Other Actions on behalf of the Debtors, their Estates, and the post-confirmation Estates, which have not been settled or adjudicated prior to the Effective Date, including, without limitation, all claims and causes of action to recover money or property and to determine the validity, extent or priority of a lien or other interest in property whether arising under bankruptcy law or nonbankruptcy law and whether or not commenced prior to the Confirmation Date; including Avoidance and Other Actions, except as provided in the Plan.  All such claims and causes of action of the Debtors against any Person, at its option,

-31-

may be used to offset any payment or distribution due to such Person under the Plan. Potential Avoidance and Other Actions may be pursued by the Debtors at any time when permitted by applicable law.

k.      Objections to Claims and Interests

As soon as practicable, but in no event later than ninety (90) days after the Effective Date unless otherwise ordered by the Court, the Debtors, Reorganized Debtors, and any other party in interest may object to the allowance of any Claim or Interest other than the claims of the Secured Lenders, which claims have been deemed allowed by prior Orders of this Court or are otherwise provided for in this Plan. Nothing contained herein, however, shall limit the Reorganized Debtors' right to object to Claims or Interests, if any, that are filed or amended at any time.

l.      Distributions Under the Plan

The Plan includes a number of provisions governing distributions under the Plan. These include the following:

(1)      Provisions for Distributions Pending Determination of Certain Claims for Taxes

Notwithstanding any other provision of the Plan and unless the Bankruptcy Court orders otherwise, prior to making distributions on account of Allowed Claims, other than Administrative Claims and Tax Claims under the Plan, the Debtors will make adequate provisions for the satisfaction of Claims for taxes entitled to treatment as administrative expenses; provided, however, that unless otherwise ordered by a Bankruptcy Court, the Debtors will have no obligation to withhold funds, designate reserves, or make other provisions for the payment of any Claims for taxes that have been disallowed by order of the Bankruptcy Court.

(2)      No Distributions on Account of Claims that Have Not Become Allowed Claims

-32-

Notwithstanding any other provision of the Plan, no payment or distribution will be made with respect to any Claim that has not become an Allowed Claim, except that the entity responsible for distribution may distribute consideration attributable to any undisputed portion of a Claim and withhold the remainder.

(3)     Reserves for Claims that have not Become Allowed Claims

Distributions on account of Claims that have not become Allowed Claims will be governed by the following provisions:

(a)     The Debtors will not be required to withhold funds or consideration, designate reserves, or make other provisions for the payment of any Claims that have been disallowed by a Final Order of the Bankruptcy Court.

(b)     Except as otherwise provided in the Plan, the Debtors will not be required to withhold funds or consideration, designate reserves, or make other provisions for the payment of any Claims that have been disallowed by an order of the Bankruptcy Court that has not become a Final Order as of any applicable time for distribution under the Plan, unless the Bankruptcy Court orders otherwise or unless the Bankruptcy Court's order of disallowance has been stayed.

(c)     With respect to Claims that have not become Allowed Claims that are not governed by subparagraph (a) or subparagraph (b) above, at each applicable time for distribution, a sufficient amount of the consideration to be distributed under the Plan shall be withheld or reserved to allow for a distribution on account of the face amount of such Claims, in accordance with the Class of such Claims, provided, however, that the Debtors shall distribute consideration attributable to any undisputed portion and shall withhold the remainder. The Bankruptcy Court may, after notice and a hearing (as defined in Bankruptcy Code section 102), fix a lesser amount than the face amount as the amount on account of which consideration shall be withheld. In the case of Claims not stating an amount, the Debtors or any holder of such Claims may request that the Bankruptcy Court, after notice and a hearing (as defined in Bankruptcy Code section 102), determine an amount.

(4)    Persons Responsible for Distribution of Plan Consideration. The Debtors will disburse all consideration to be distributed under the Plan.

m.    Unclaimed Cash

If any Person entitled to receive Cash under the Plan cannot be located on the date a distribution under the Plan is due, such Cash will be set aside and held in a segregated, interest-bearing fund to be maintained by the entity responsible for such distributions under the Plan. If such Person is located within ninety (90) days of the Effective Date, such Cash, together with any interest earned thereon, will be paid or distributed to such Person. If such Person cannot be located within ninety (90) days of the Effective Date, any such Cash and accrued interest thereon will be retained by the Reorganized Debtors. Nothing contained in the Plan will require the Debtors to attempt to locate such Person. It is the obligation of each Person claiming rights under the Plan to keep the Debtors advised of its current address by sending written notice of any changes to the Debtors.

n.    Unnegotiated Distribution Checks

Checks or drafts issued pursuant to the Plan to Persons holding Allowed Claims and not presented for payment within ninety (90) days following mailing thereof to the last known address of such Person will be deemed nonnegotiable thereafter.

o.    Distribution Dates

Whenever any distribution to be made under the Plan is due on a day other than a Business Day, the distribution will be made instead, without penalty or interest, on the next Business Day. The Bankruptcy Court will retain power, after the Confirmation Date, to extend distribution dates for cause, upon motion and notice to affected parties.

EAST\42806146.9

p.      Orders Respecting Claims Distribution

The Plan provides that, after Confirmation of the Plan, the Bankruptcy Court will retain jurisdiction to enter orders in aid of consummation of the Plan respecting distributions under the Plan and to resolve any disputes concerning distributions under the Plan.

q.      Modification of Plan

The Plan provides that the Debtors reserve the right, in accordance with the Bankruptcy Code, and subject to the consent of the Secured Lenders, to amend or modify the Plan.

r.      Severability

If, prior to the Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors, and subject to the consent of the Secured Lenders, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as they may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to their terms.

s.      Successors and Assigns

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

EAST\42806146.9

### J.     Conditions for Confirmation of the Plan

#### 1.     Conditions to Confirmation

Confirmation of the Plan shall not occur unless all of the requirements of the Bankruptcy Code for Confirmation of the Plan with respect to the Debtors shall have been satisfied.  In addition, Confirmation shall not occur, the Plan shall be null and void and of no force and effect, and the Plan shall be deemed withdrawn unless the Bankruptcy Court shall have entered all orders (which may be orders included within the Confirmation Order) required to implement the Plan.

#### 2.     Waiver and Nonfulfillment of Conditions to Confirmation

Nonfulfillment of any condition precedent to confirmation of the Plan may be waived only by the Debtors, subject to consent of the Secured Lenders.  In the event that the Debtors determine that the conditions to Confirmation which they may waive cannot be satisfied and should not, in its sole discretion, be waived, the Debtors subject to consent of the Secured Lenders, may propose a new Plan, may modify the Plan as permitted by law, or may request other appropriate relief.

#### 3.     Conditions to Effective Date

The following are conditions precedent to the Effective Date of the Plan, and the Plan will be null and void and of no force and effect and will be deemed withdrawn unless they are each satisfied or waived in accordance with the Plan: (i) the Court shall have entered the Confirmation Order and such order has become a Final Order; and (ii) no request for revocation of the Confirmation Order under Bankruptcy Code section 1144 shall have been made and still be pending.

#### 4.     Waiver and Nonfulfillment of Conditions to Effective Date

EAST\42806146.9

Nonfulfillment of any condition precedent to the Effective Date may be waived only by the Debtors, subject to consent of the Secured Lenders. In the event that the Debtors determine that the above conditions to the Effective Date cannot be satisfied and should not, in their sole discretion, be waived, the Debtors, subject to consent of the Secured Lenders, may propose a new Plan, may modify the Plan as permitted by law, or may request other appropriate relief.

5.    <u>Confirmation Order Provisions for Pre-Effective Date Actions</u>

The Confirmation Order will empower and authorize the Debtors to take or cause to be taken, prior to the Effective Date, all actions which are necessary to enable the Debtors to implement the provisions of the Plan and satisfy all other conditions precedent to the effectiveness of the Plan.

## IV.    **TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

### A.    **Assumption and Rejection of Executory Contracts**

On the Effective Date, all Executory Contracts, including all written employment agreements, severance contracts, employee benefit or retirement or supplemental retirement benefit plans and agreements and unexpired leases of the Debtors, that have not been the subject of a motion or order to assume or reject pending the occurrence of the Effective Date, shall be deemed assumed by the Debtors as of the Petition Date.

### B.    **Insurance Policies**

Each of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto (the "<u>Insurance Policies</u>"), unless previously canceled, are treated as Executory Contracts under the Plan, and the Plan shall constitute a motion to assume the Insurance Policies. Subject to the occurrence of the Effective Date, the entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumption pursuant to Bankruptcy Code sections 365(a) and 1123(b)(2) and a finding by the Bankruptcy Court that such assumption is in

the best interest of the Debtors, their Estates, and all parties in interest in these Chapter 11 Cases. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of the Debtors exiting as of the Confirmation Date because the Debtors are current.  To the extent the Bankruptcy Court determines otherwise as to any of the Insurance Policies, the Debtors reserve the right to seek rejection of such Insurance Policy or other available relief.

C.  **Claims Based Upon Rejection of Executory Contracts or Unexpired Leases**

Each Person who is a party to an Executory Contract or Unexpired Lease which was not previously rejected prior to the Effective Date or which is rejected pursuant to the Plan, shall be entitled to file a proof of claim for damages alleged to have arisen from the rejection of the Executory Contract or Unexpired Lease to which such Person is a party.  All proofs of claim with respect to Claims arising from the rejection of any Executory Contract or Unexpired Lease shall be filed with the Bankruptcy Court within the earlier of: (1) thirty (30) days after the date of the Bankruptcy Court order approving the Debtors' rejection of such Executory Contract or Unexpired Lease; or (2) within thirty (30) days after the Confirmation Date.  All Claims arising out of the rejection of Executory Contracts or Unexpired Leases shall be General Unsecured Claims and classified in Class 4, which shall be treated as provided in the Plan.

D.  **Disallowance of Contribution Claims**

On the Effective Date, any Claim for reimbursement, indemnification, contribution or subrogation of an Entity that is liable with any Debtors on or that has secured the Claim of a creditor not heretofore disallowed by order of the Bankruptcy Court shall be deemed disallowed to the extent (i) such Creditor's Claim against the Debtors is disallowed; (ii) such Claim for reimbursement, indemnification, contribution or subrogation is contingent as of the Confirmation Date, including, without limitation, all Claims which are disallowed under Bankruptcy Code

-38-                                                                        EAST\42806146.9

section 502(e); or (iii) such Entity asserts a right of subrogation to the rights of such creditor under Bankruptcy Code section 509 except as otherwise specifically provided therein.

## V.    STATUTORY REQUIREMENTS FOR CONFIRMATION OF THE PLAN OF REORGANIZATION

The Plan must be approved by the Bankruptcy Court after a confirmation hearing.

### A.    Elements of Confirmation

In order for the Plan to be confirmed, the Bankruptcy Code requires that the Bankruptcy Court determine that the Plan complies with the technical requirements of Chapter 11 of the Bankruptcy Code and that the disclosures concerning the Plan have been adequate and have included information concerning all payments made or promised in connection with the Plan and the Chapter 11 Cases. The Bankruptcy Code also requires that: (1) the Plan be accepted by the requisite votes of Creditors, except to the extent that confirmation despite dissent is available under Bankruptcy Code section 1129(b); (2) the Plan is feasible (that is, there is a reasonable probability that the Debtors will be able to perform their obligations under the Plan without needing further financial reorganization not contemplated by the Plan); and (3) the Plan is in the "best interests" of all Creditors and Interest Holders (that is, Creditors and Interest Holders will receive at least as much under the Plan as they would receive in a hypothetical liquidation case under chapter 7 of the Bankruptcy Code). To confirm the Plan, the Bankruptcy Court must find that all of the above conditions are met, unless the applicable provisions of Bankruptcy Code section 1129(b) are employed to confirm the Plan, subject to satisfying certain conditions, over the dissent or deemed rejections of Classes of Claims or Interests.

### B.    Best Interests of Claim and Interest Holders

Pursuant to Bankruptcy Code sections 1129 a plan must provide classes of unsecured creditors and interest holders more than such classes would receive in a hypothetical liquidation

under chapter 7 of the Bankruptcy Code.  As is set forth in the accompanying Liquidation Analysis, attached hereto as Exhibit D, in the event of a chapter 7 liquidation, classes of unsecured creditors and interest holders will receive less than in the proposed Plan.  Absent the restructuring set forth in the Plan, in the event of a chapter 7 liquidation, the Claims of Classes 4 and 5 would not be paid in full.  Under the Plan, all Classes of Claims and Interests are paid either in full or nearly in full.  Thus, the Plan provides unsecured creditors with a far greater return than they would receive in a hypothetical chapter 7 liquidation and is in the best interests of creditors.

### C.    Feasibility of the Plan

In connection with confirmation of the Plan, the Bankruptcy Court must determine that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors or any successor to the Debtors under the Plan, unless such liquidation or reorganization is proposed in the Plan.  The Debtors believe that the Debtors will be able to perform its obligations under the Plan without the need for further financial reorganization and are providing Financial Projections, attached hereto as Exhibit E.

As the Financial Projections indicate, the Debtors anticipate robust earnings in the upcoming years.  Specifically, the Debtors project revenues of approximately $306 million, $348 million and $99 million in calendar year 2010, 2011 and the first three months of 2012, respectively.  Resulting from these revenues, the Debtors project pre-tax net income of approximately $116 million, $157 million and $52 million in calendar year 2010, 2011, and the first three months of 2012, respectively.  Due to the Debtors' corporate structure the income is passed through to the Holder of the Interests for tax purposes, and the Debtors' projections indicate that the Debtors will distribute, for these tax purposes, approximately $47 million, $50

million, and $0 million in calendar years 2010, 2011, and the first three months of 2012, respectively.

These strong financial results will enable the Debtors to repay the Secured Lenders over a twenty-four (24) month period, beginning in April 2010. The Debtors propose to repay approximately $38 million in 2010, approximately $72 million in 2011 and approximately $43 million in 2012. In light of the above projected revenue figures, such payments are feasible.

### D.  Confirmation of the Plan if One or More Classes Do Not Accept

Certain provisions of the Bankruptcy Code permit confirmation of a plan of reorganization even if a class or classes do not accept the plan so long as one impaired Class votes to accept the plan. These provisions, set forth in Bankruptcy Code section 1129(b), allow for the confirmation of the plan even though some classes vote to or are deemed to reject the plan, provided that the plan "does not discriminate unfairly" and is "fair and equitable" as to each impaired class that has not accepted it.

A plan is fair and equitable as to a class of secured claims that rejects a plan if the plan provides either: (1) that the holders of claims included in the rejecting class retain the liens securing those claims, whether the property subject to those liens is retained by the Debtors or transferred to another entity, to the extent of the allowed amount of such claims; and (2) receive, on account of such claims, deferred cash payments totaling at least the allowed amount of such claims, possessing a value, as of the effective date of the plan, of at least the value of the holder's interest in the estate's interest in such property; (3) for the sale, subject to the Bankruptcy Code section 363(b), of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of the sale, and that such liens on proceeds will be treated in accordance with clause (a) of this subparagraph; or (4) for the realization by such holders of the indubitable equivalent of their claims.

A plan is fair and equitable to a class of unsecured claims that rejects or is deemed to reject the plan, if the plan provides: (1) for each holder of a claim included in the rejecting class to receive or retain on account of that claim property that has a value, as of the effective date of the plan, equal to the allowed amount of such claim, or (2) that the holder of any claim or interest that is junior to the claims of such class will not receive or retain on account of such junior claim or interest any property at all.

IF THE OTHER CONFIRMATION REQUIREMENTS ARE SATISFIED AT THE CONFIRMATION HEARING, THE DEBTORS WILL ASK THE BANKRUPTCY COURT TO RULE THAT THE PLAN MAY BE CONFIRMED NOTWITHSTANDING ANY VOTE OF SECURED OR UNSECURED CREDITORS TO REJECT THE PLAN ON THE GROUND THAT THE REQUIREMENTS OF SECTION 1129(B) HAVE BEEN SATISFIED.

**E.**    **Hearing on Confirmation of the Plan**

The Bankruptcy Court will hold a hearing to determine if the Plan has been accepted by a requisite number of Claims and Interests and whether the other requirements for Confirmation of the Plan have been satisfied.  Notice of the confirmation hearing date and location will be sent to all creditors and parties entitled to vote.

CREDITORS AND HOLDERS OF EQUITY INTERESTS ARE NOT REQUIRED TO ATTEND THE HEARING ON CONFIRMATION UNLESS THEY HAVE EVIDENCE OR ARGUMENT TO PRESENT TO THE BANKRUPTCY COURT CONCERNING THE MATTERS TO BE ADDRESSED AT THE HEARING ON CONFIRMATION.

**VI.**    **PROVISIONS REGARDING CORPORATE GOVERNANCE OF THE REORGANIZED DEBTORS**

**A.**    **Corporate Action**

EAST\42806146.9

On the Effective Date, the adoption, filing, approval and ratification, as necessary, of all corporate or related actions contemplated hereby with respect to each of the Reorganized Debtors shall be deemed authorized and approved in all respects.   Without limiting the foregoing, such actions may include: (i) the adoption and filing of the new certificate(s) of incorporation, (ii) the approval of the new Debtors' bylaws, and (iii) the election or appointment, as the case may be, of directors and officers or members for the Reorganized Debtors.

All matters provided for herein involving the corporate structure of any Debtor or any Reorganized Debtor, or any corporate action required by any Debtor or any Reorganized Debtor in connection with the Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders or directors of such Debtors or Reorganized Debtors or by any other stakeholder.

On or after the Effective Date, the appropriate officers of each Reorganized Debtor and members of the board of directors, board of managers or equivalent body of each Reorganized Debtor are authorized and directed to issue, execute, deliver, file and record any and all agreements, documents, securities, deeds, bills of sale, conveyances, releases and instruments contemplated by the Plan in the name of and on behalf of such Reorganized Debtors and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### B. Certificates of Incorporation and Bylaws

The certificates of incorporation and bylaws (or other formation documents, if applicable) of the Debtors shall be amended or deemed amended as may be required to be consistent with the provisions of the Plan and the Bankruptcy Code.  The Reorganized Debtors' Certificates of Incorporation shall be deemed amended, without further action, to include (i) a provision prohibiting the issuance of nonvoting equity securities to the extent required by Bankruptcy

-43-                                                    EAST\42806146.9

Code section 1123(a)(6) and (ii) a provision setting forth an appropriate distribution of voting power among classes of equity securities possessing voting power, including, in the case of any class of equity securities having a preference over another class of equity securities with respect to dividends, adequate provisions for the election of directors representing such preferred class in the event of default in the payment of such dividends.

After the Effective Date, any of the Reorganized Debtors may file restated certificates of incorporation (or other formation documents, if applicable) with the Secretary of State in any appropriate jurisdiction.

### C. Directors and Officers of the Reorganized Debtors

On the Effective Date, the management, control and operation of each Reorganized Debtor shall become the general responsibility of the board of directors, or equivalent body of a limited liability company, of such Reorganized Debtor.

On the Effective Date, the term of the Debtors' respective boards of directors shall expire and such members shall be replaced by the Reorganized Debtors' boards of directors or equivalent body of a limited liability company. The classification and composition of these individuals shall be consistent with the Reorganized Debtors' certificates of incorporation and bylaws. Pursuant to Bankruptcy Code section 1129(a)(5), the Debtors hereby disclose that Tracy Young is proposed to serve on the Reorganized Debtors' boards of directors. Each such director shall serve from and after the Effective Date in accordance with applicable non-bankruptcy law and the terms of the Reorganized Debtors' certificates of incorporation and bylaws.

Subject to any requirement of Bankruptcy Court approval pursuant to Bankruptcy Code section 1129(a)(5), the principal officers of each Debtor immediately prior to the Effective Date will be the officers of such Reorganized Debtor as of the Effective Date. Each such officer shall

EAST\42806146.9

serve from and after the Effective Date in accordance with applicable non-bankruptcy law and the terms of such Reorganized Debtors' constituent documents.

The Debtors hereby also disclose the nature of the compensation payable to each Insider that will be employed or retained by the Reorganized Debtors. John Robinson, III receives an annual salary of $375,000 plus an annual bonus which is determined by the financial performance of the Reorganized Debtors. Tracy Young receives an annual salary of $250,000 and will receive distributions on account of his Equity Interests limited as provided in the Term Sheet and New Lender Credit Agreement.

### D. Consummation Of The Plan Pursuant To Bankruptcy Code Section 1129

To the extent that any impaired Class rejects the Plan or is deemed to have rejected the Plan, the Debtors will request confirmation of the Plan, as it may be modified from time to time, under Bankruptcy Code section 1129(b). The Debtors reserve the right to alter, amend, modify, revoke or withdraw the Plan or any Plan exhibit or schedule, including the right to amend or modify it to satisfy the requirements of Bankruptcy Code section 1129(b), if necessary.

## VII. CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

The Disclosure Statement does not discuss any aspects of federal income taxation that may be relevant to a particular creditor in light of its personal investment circumstances or to certain creditors subject to special treatment under the federal income tax laws (for example, life insurance companies, tax-exempt organizations, foreign corporations and individuals who are not citizens or residents of the United States) and does not discuss any aspects of state, local or foreign taxation.

DUE TO A LACK OF DEFINITIVE JUDICIAL OR ADMINISTRATIVE AUTHORITY AND INTERPRETATION, SUBSTANTIAL UNCERTAINTIES EXIST WITH RESPECT TO VARIOUS TAX CONSEQUENCES OF THE PLAN. FOR THE FOREGOING

EAST\42806146.9

REASONS CREDITORS AND SHAREHOLDERS ARE URGED TO CONSULT WITH THEIR OWN TAX ADVISORS AS TO SPECIFIC TAX CONSEQUENCES (FEDERAL, STATE AND LOCAL) OF THE PLAN.

## VIII.   EFFECTS OF PLAN CONFIRMATION

A confirmed plan leaves the holders of claims with new rights as set forth in the confirmed plan.  Therefore, in the event of a default after Confirmation, a Holder of a Claim may pursue its remedies under the Plan.  Some rights may remain with Holders of Claims after the provisions of the confirmed Plan have been carried out.  The automatic stay of Bankruptcy Code section 362(a) as to actions against the Debtors remain in effect until the Effective Date of the Plan.  Thereafter, all parties in interest will be enjoined from taking any action inconsistent with the Plan.

### A.   Vesting and Liens.

Except as otherwise expressly provided in the Plan or the Confirmation Order, property of the Estates will vest in the Reorganized Debtors, free and clear of all Claims, liens, encumbrances, charges and other Interests of Creditors and Interest Holders.

### B.   Releases and Discharges

The releases and discharges of Claims and Causes of Action described in the Plan, including releases by the Debtors and by Holders of Claims, constitute good faith compromises and settlements of the matters covered thereby and are consensual. Such compromises and settlements are made in exchange for consideration and are in the best interest of Holders of Claims, are fair, equitable, reasonable and are integral elements of the resolution of the Chapter 11 Cases in accordance with the Plan. Each of the discharge, release, indemnification and exculpation provisions set forth in the Plan (a) is within the jurisdiction of the Bankruptcy Court under sections 1334(a), 1334(b) and 1334(d) of title 28 of the United States Code, (b) is an

EAST\42806146.9

essential means of implementing the Plan pursuant to Bankruptcy Code section 1123(a)(6), (c) is an integral element of the transactions incorporated into the Plan, (d) confers material benefit on, and is in the best interests of, the Debtors, their Estates and their Creditors, (e) is important to the overall objectives of the Plan to finally resolve all Claims among or against the parties-in-interest in the Chapter 11 Cases with respect to the Debtors and (f) is consistent with sections 105, 1123, 1129 and other applicable provisions of the Bankruptcy Code.

### C.    Discharge and Injunction

Except as otherwise specifically provided in the Plan or in the Confirmation Order, the rights afforded in the Plan and the payments and distributions to be made hereunder shall discharge all existing debts and Claims, and shall terminate all Interests of any kind, nature or description whatsoever against or in the Debtors or any of their assets or properties to the fullest extent permitted by Bankruptcy Code section 1141. Except as otherwise specifically provided herein or in the Confirmation Order, upon the Effective Date, all existing Claims against the Debtors and Interests in the Debtors shall be, and shall be deemed to be, discharged and terminated, and all Holders of Claims and Interests (and all representatives, trustees or agents on behalf of each holder) shall be precluded and enjoined from asserting against the Reorganized Debtors, their successors or assignees, or any of their assets or properties, any other or further Claim or Interest based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a Proof of Claim and whether or not the facts or legal bases therefore were known or existed prior to the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims against, liabilities of and Interests in the Debtors, subject to the occurrence of the Effective Date.

EAST\42806146.9

Upon the Effective Date and in consideration of the distributions to be made hereunder, except as otherwise provided herein, each holder (as well as any representatives, trustees or agents on behalf of each holder) of all Claims or Interests and any affiliate of such holder shall be deemed to have forever waived, released and discharged the Debtors, to the fullest extent permitted by Bankruptcy Code section 1141, of and from any and all Claims, Interests, rights and liabilities that arose prior to the Effective Date. Upon the Effective Date, all such persons shall be forever precluded and enjoined, pursuant to Bankruptcy Code section 524 of the, from prosecuting or asserting any such discharged Claim against or terminated Interest in the Debtors.

Except as otherwise expressly provided in the Plan, all persons or entities who have held, hold or may hold Claims or Interests and all other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, representatives and affiliates, are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Interest against the Debtors, the Reorganized Debtors or property of any Debtors or Reorganized Debtors, other than to enforce any right to a distribution pursuant to this Plan, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtors, the Reorganized Debtors or property of any Debtors or Reorganized Debtors, other than to enforce any right to a distribution pursuant to this Plan, (iii) creating, perfecting or enforcing any Lien or encumbrance of any kind against the Debtors or Reorganized Debtors or against the property or interests in property of the Debtors or Reorganized Debtors, other than to enforce any right to a distribution pursuant to this Plan or (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtors or Reorganized Debtors or against the property or interests in property of the

Debtors or Reorganized Debtors, with respect to any such Claim or Interest. Such injunction shall extend to any successors or assignees of the Debtors and Reorganized Debtors and their respective properties and interest in properties.

### D. Term of Injunction or Stays

Unless otherwise provided in the Plan, any injunction or stay arising under or entered during the Chapter 11 Cases under Bankruptcy Code sections 105 or 362 or otherwise that is in existence on the Confirmation Date shall remain in full force and effect until the later of the Effective Date or the date indicated in the order providing for such injunction or stay.

### E. Exculpation

Pursuant to the Plan, none of the Debtors, Reorganized Debtors, or any of their respective affiliates, members, officers, directors, employees, advisors, actuaries, accountants, attorneys, financial advisors, investment bankers, consultants, professionals or agents, shall have or incur any liability to any holder of a Claim or Interest for any act or omission in connection with, related to or arising out of, the Chapter 11 Cases, the negotiation of any settlement or agreement in the Chapter 11 Cases, the pursuit of confirmation of the Plan, the consummation of the Plan, the preparation and distribution of the Disclosure Statement, the offer, issuance and distribution of any securities issued or to be issued pursuant to the Plan or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct, ultra vires acts or gross negligence.

### F. Release by the Debtors

Pursuant to the Plan, as of the Effective Date, the Debtors, their Estates and the Reorganized Debtors release all of the Released Parties (defined below) from any and all causes of action (other than the rights of the Debtors or the Reorganized Debtors to enforce the Plan and the Plan Documents including contracts, instruments, releases, indentures and other agreements

EAST\42806146.9

or documents delivered thereunder) held, assertable on behalf of or derivative from the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, based on or relating to or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring, the Chapter 11 Cases, the purchase, sale or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor, any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation or preparation of the Plan and Disclosure Statement, or related agreements, instruments or other documents, which Causes of Action are based in whole or in part on any act, omission, transaction, event or other occurrence (except for willful misconduct, ultra vires acts, or gross negligence) taking place before the Effective Date. For the purposes of the Plan, "Released Parties" means the Debtors, the Committee, the Secured Lenders and/or any of their or the Debtors' respective affiliates, members, officers, directors, employees, advisors, actuaries, attorneys, financial advisors, investment bankers, professionals or agents; provided, however, that except as set forth in the Plan, if any Released Party directly or indirectly brings or asserts any claim or cause of action in any way arising out of or related to any document or transaction that was in existence prior to the Effective Date against the Debtors, the Reorganized Debtors or any of their respective affiliates, officers, directors, members, employees, advisors, actuaries, attorneys, financial advisors, investment bankers, professionals or agents, then the release set forth herein of the Plan (but not any release or indemnification or any other rights or claims granted under any other section of the Plan or under any other document or agreement) shall automatically and retroactively be null and void ab initio with respect to such Released Party; provided further that the immediately

EAST\42806146.9

preceding clause shall not apply to the prosecution in the Bankruptcy Court (or any appeal therefrom) of the amount, priority or secured status of any prepetition Claim against the Debtors.

IX.    **ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN**

A.    **Liquidation Under Chapter 7**

If no chapter 11 plan can be confirmed, the Chapter 11 Cases may be converted to a case under chapter 7 of the Bankruptcy Code, in which a trustee would be elected or appointed to liquidate the assets of the Debtors.  The Debtors believe that liquidation under chapter 7 would result in smaller distributions being made to Creditors than those provided for in the Plan because of the additional administrative expenses involved in the appointment of a trustee and attorneys and other professionals during such liquidation.

The Debtors, with the assistance of their professionals, have prepared a Liquidation Analysis, attached hereto as Exhibit D.  The Liquidation Analysis is based upon a hypothetical liquidation in a chapter 7 case.  The Debtors have taken into account the nature, status and underlying value of its assets, the ultimate realizable value of its assets, and the extent to which such assets are subject to liens and security interests.

The likely form of any liquidation would be the sale of the Debtors' individual assets.  Based on this analysis, it is likely that a chapter 7 liquidation of the Debtors' assets would produce less value for distribution to Creditors or Interest Holders than that recoverable under the Plan.  In the opinion of the Debtors, the recoveries projected to be available in a chapter 7 liquidation are not likely to afford the Holders of Claims and Interests as great a realization potential as do the Plan.

B.    **Alternative Plan of Reorganization**

If the Plan is not confirmed, the Debtors or any other party in interest could attempt to formulate a different plan of reorganization.  The Debtors believe that the Plan enables the Debtors to continue the servicing of their customers in the form of the Reorganized Debtors, and allows Creditors to realize the highest recoveries under the circumstances.

## X.        CONCLUSION AND RECOMMENDATION

The Debtors urge all Creditors entitled to vote on the Plan to vote to accept the Plan and to evidence such acceptance by immediately returning their properly completed ballots to the appropriate voting agent as set forth on the ballots within the time stated in the notice served with this Disclosure Statement.

EAST\42806146.9

Dated:  March __, 2010
       Savannah, Georgia

Respectfully submitted,


_____*/s/ Tracy Young*_____
Tracy Young
Chief Executive Officer
TitleMax Holdings, LLC


_____*/s/ Tracy Young*_____
Tracy Young
Chief Executive Officer
TitleMax Funding, Inc.


_____*/s/ Tracy Young*_____
Tracy Young
Chief Executive Officer
TitleMax of Alabama, Inc.


_____*/s/ Tracy Young*_____
Tracy Young
Chief Executive Officer
TitleMax of Georgia, Inc.


_____*/s/ Tracy Young*_____
Tracy Young
Chief Executive Officer
TitleMax of South Carolina, Inc.


_____*/s/ Tracy Young*_____
Tracy Young
Chief Executive Officer
TitleMax of Tennessee, Inc.


_____*/s/ Tracy Young*_____
Tracy Young
Chief Executive Officer
TitleMax of Missouri, Inc.


_____*/s/ Tracy Young*_____
Tracy Young
Chief Executive Officer
TitleMax of Illinois, Inc.

EAST\42806146.9

_/s/ Tracy Young_
Tracy Young
Chief Executive Officer
TitleMax of Texas, Inc.

_/s/ Tracy Young_
Tracy Young
Chief Executive Officer
TitleMax of Virginia, Inc.

_/s/ Tracy Young_
Tracy Young
Chief Executive Officer
TitleMax of Mississippi, Inc.

_/s/ Tracy Young_
Tracy Young
Chief Executive Officer
TitleMax Financing, Inc.

_/s/ Tracy Young_
Tracy Young
Chief Executive Officer
CheckMax of Mississippi, Inc.

_/s/ Tracy Young_
Tracy Young
Chief Executive Officer
CheckMax of Tennessee, Inc.

_/s/ Tracy Young_
Tracy Young
Chief Executive Officer
CheckMax of South Carolina, Inc.

_/s/ Tracy Young_
Tracy Young
Chief Executive Officer
CheckMax of Virginia, Inc.

EAST\42806146.9