*Dated as of March 10, 2010*

## AGREED GENERAL TERMS AND CONDITIONS FOR RESTRUCTURE OF SECURED LENDERS CLAIM

| | |
|---|---|
| Borrowers and Guarantors: | The borrowers and guarantors (collectively, the "Borrowers) under that certain Loan and Security Agreement dated as of April 20, 2007 by and among the Borrowers, Merrill Lynch Mortgage Capital Inc., as agent, and the lenders identified therein (as amended the "Prepetition Credit Agreement").[1] |
| Administrative Agent: | Merrill Lynch Mortgage Capital Inc. and its successor-in-interest |
| Lenders: | Secured Lenders and such other lenders as may be approved by Administrative Agent. |
| Claim Amount: | Principal amount owing to the Secured Lenders as of the effective date (the "Effective Date") of a confirmed plan of reorganization for the Borrowers incorporating the terms outlined herein. |
| Interest Rate: | LIBOR plus 11% per annum, payable monthly on the 10th business day of each month. Default interest will be an additional 4% added to the applicable non-default rate. |
| Term and Maturity Date: | That certain date which is two (2) years from the Effective Date, subject to earlier termination resulting from an event of default and acceleration of the claims or the sale of all or substantially all of the Collateral. |
| Payments to Secured Lenders on Effective Date: | $23,000,000 paid on Effective Date to be applied as follows: |

    1.    Payment of default interest on Secured Lenders' claim from Petition Date to date default interest rate began to be charged under the Sixth Interim Cash Collateral Order, plus interest otherwise accrued and which would have been paid on the Secured Lenders' claims if principal payments made during the Chapter 11 cases had been applied to the Tranche A Loan and the Tranche B Loan as advocated by the Secured Lenders, less $500,000.

---

[1] Capitalized terms used herein, unless otherwise defined, shall be as defined in the Prepetition Credit Agreement or the Borrowers' First Amended Plan of Reorganization (as amended, the "Plan") filed on January 12, 2010, as the context may apply.

    ✓ Debtors
    ✓ Merrill Lynch
    ___ Fortress
    ___ Committee

LEGAL_US_E # 86765195.10

|  |  |  |
|---|---|---|
|  | 2. | Balance applied to principal amount owing to the Secured Lenders. |
| Amortization After Effective Date: | 1. | Monthly principal payments, payable on the 10th business day of each month after the Effective Date until payment in full as follows:<br><br>a. $1,500,000 per month continuing for each calendar month for year 2010; and<br>b. $6,000,000 per month for each calendar month for years 2011 and 2012 until the Secured Lenders claim is paid in full. |
|  | 2. | Any unpaid amount due and payable on Maturity Date. |
|  |  | [Note: Prior to Effective Date, $1,000,000 per month principal payment and payment of other fees and costs to be made in accordance with Cash Collateral Orders.] |
| Fees: | 1. | Monthly monitoring fee in the amount of $50,000 payable to the Secured Lenders, pro rata, beginning on April 10, 2010 (assuming the Effective Date has occurred, but if not, the pro rata portion of the fee for that month) and continuing on the 10th business day of each month thereafter (pro rated for any partial month) until the Secured Lenders claim is paid in full in cash. |
|  | 2. | Administrative Agent fee of 25 bps per annum payable monthly beginning on April 10, 2010 (assuming the Effective Date has occurred, but if not, the pro rata portion of the fee for that month) and continuing on the 10th business day of each month thereafter (pro rated for any partial month) until the Secured Lenders claim is paid in full in cash. |
|  | 3. | $1,000,000 restructuring fee paid in April 2009 to be retained by Secured Lenders per terms of April 7, 2009 letter agreement. |
| Mandatory Prepayments: | 1. | 100% of net cash received from asset sales as provided under the terms of the Prepetition Credit Agreement. |
|  | 2. | 25% of net cash received on issuance of Sub Debt, or on issuance or sale of new equity interests, excluding additional equity contributions from existing equity holders or the exercise of outstanding options or warrants. |

3. Excess cash balance recapture as follows:

   a. 50% of cash balance in excess of $30,000,000 as of January 31, 2011;
   b. 50% of actual cash balance in excess of $69,000,000 as of February 28, 2011; and
   c. 75% of net cash received by Borrowers upon issuance of any Sub Debt shall be excluded from calculation of cash balance as of January 31, 2011 and February 28, 2011 and shall be held in a separate segregated account separate from blocked accounts holding cash from Borrowers' core business operations.

4. As otherwise provided for under the terms of the Prepetition Credit Agreement.

| | |
|---|---|
| Optional Prepayments: | Permitted in whole or in part at any time without any prepayment fee. |
| Allocation and Application of Principal Prepayments: | Allocated among the Secured Lenders based on their pro rata interests under the restructured claim. Application of principal prepayments, other than scheduled amortization, to be charged to principal payments in inverse order of maturity. |
| Security: | First priority security interest in the Collateral of the same nature and type as under the Prepetition Credit Agreement, and shall specifically include deposit account control agreements on accounts as required per the terms of the Prepetition Credit Agreement. Eligible Receivables with respect to the Collateral shall be subject to an advance rate of no more than: |

   1. 55% for April 2010;
   2. 53% for May 2010;
   3. 52% for June 2010;
   4. 50% for the months of July through December 2010;
   5. 45% for the months of January through June 2011; and
   6. 40% from July 2011 through Maturity Date

Borrowing base reports to be provided in same format and pursuant to same timing as such reports are currently being provided. To the extent that on a test date the applicable ratio is exceeded, Borrowers shall have a three (3) day period within which to make a payment to Secured Lenders to "cure" any resulting default. Payments received shall be applied to outstanding principal owed in inverse order of maturity.

| | |
|---|---|
| Representations and Warranties: | Usual and customary representations and warranties for credit facilities of this type, consistent with and similar to representations and warranties contained in the Prepetition Credit Agreement and this term sheet. |
| Affirmative and Negative Covenants: | Usual and customary affirmative and negative covenants for credit facilities of this type, consistent with and similar to affirmative and negative comments contained in the Prepetition Credit Agreement and this term sheet. |
| Reporting Requirements: | Usual and customary reporting requirements for credit facilities of this type, consistent with and similar to reporting requirements contained in the Prepetition Credit Agreement. |

Financial Covenants and Capital Expenditure Limitations:

1. EBITDA to Interest of no less than 3.0 times.

2. Debt to EBITDA of no greater than 2.5 times through the end of 2010 and no greater than 2.0 times thereafter.

3. The reorganized Borrowers may issue additional unsecured debt and guaranties, including Sub Debt, up to a maximum of $200,000,000 of total indebtedness, including the then outstanding claims of Secured Lenders.

4. Total liabilities to Tangible Net Worth no greater than 2.25 times.

5. Tangible Net Worth no less than $90,000,000 plus 90% of tax adjusted income.

6. Capital expenditures: (a) so long as no default, and for "core" Borrowers' operations, Capital Expenditures may not exceed [$9,180,000] in 2010, [$9,380,000] in 2011, and [$2,345,000] in the first 3 months of 2012 plus the opening, on a fiscal quarterly basis, of one new store per quarter; and (b) any other capital expenditures or expansion of business or operations of Borrowers or non-Borrower affiliates shall come solely from the issuance or sale or new equity interests, additional equity contributions from existing equity holders, the exercise of outstanding options or warrants, or the net proceeds of any Sub Debt or equity issues to be retained by Borrowers, subject to parameters assuring ability to operate and fund expansion with such proceeds. As used herein "core" Borrowers' specifically does not include Equity Auto



- 4 -

LEGAL_US_E # 86765195.10

|  |  |
|---|---|
|  | Loan LLC and TitleMax of Texas, Inc. |
| Events of Default: | Usual and customary defaults and events of defaults for credit facilities of this type, consistent with and similar to defaults and event of defaults contained in the Prepetition Credit Agreement. |
| Assignments and Participations: | As per terms of Prepetition Credit Agreement. |
| Expenses and Indemnifications: | As per the existing terms of Prepetition Credit Agreement, subject to modifications to clarify for payment of fees and expenses of a financial or similar advisor retained by or on behalf of the Agent and/or the Secured Lenders following a default and an event of default. |
| Governing Law and Forum: | As per terms of Prepetition Credit Agreement. |

Miscellaneous:

1. Distributions to Tracy Young allowed up to gross maximum of $5,000,000 per fiscal year only so long as no default or event of default exists and may be continuing with respect to the restructured Secured Lenders' claims.

2. Payment of $250,000 annual salary to Tracy Young consistent with prepetition practice.

3. Distributions to Tracy Young allowed on account of his tax liability arising from his equity interests in the Debtors provided, however, no such distributions for 2009 tax year or 2010 quarterly estimates shall occur until after the Effective Date and the execution and the effectiveness of documents as to restructured Secured Lenders' claims incorporating the terms set forth herein.

4. No payments on TY Debt Claim until payment in full in cash of Secured Lenders' claim.

5. Distributions to Tracy Young controlled entities affiliates of the Debtors (e.g., TitleMax Aviation, Inc., Parker-Young LLC and TY Investments LLC) in the aggregate amount of up to $250,000 per month, so long as no default or event of default exists or may be continuing with respect to the restructured Secured Lenders' claims, with a report of any such distributions to be provided to the Agent on a monthly basis in a form and manner to be agreed. Such payments are in addition to the $5.0 million in annual gross distributions to Tracy Young on behalf of his equity interests.



6. Any Sub Debt issued will be on usual and customary terms and conditions as to unsecured subordinated debt in comparison to senior secured debt of the type and nature held by the Secured Lenders, including but not limited to the following terms and conditions: (a) maturity at least ninety (90) days after maturity of Secured Lenders' restructured claim, (b) provide for no principal payments until after Secured Lenders' restructured claim is paid in full in cash, (c) interest may be paid so long as no default on Secured Lenders' restructured claims, and (d) shall be subject to an intercreditor agreement satisfactory to Secured Lenders.

7. The Material Adverse Change language in the restructured facility will be modified to provide that a Material Adverse Change resulting from a change in legislation will not result in an immediate Event of Default so long as the principal on the Borrowers' receivables can continue to be collected; instead, it will result in a reduction of the Advance Rate as to Eligible Receivables, in equal monthly reductions, such that the Advance Rate is no more than 30% as of the effective date of any enacted legislation. The Advance Rate reduction shall only be implemented if, after eliminating all receivables subject to the material adverse change in legislation, the applicable Advance Rate is exceeded.

8. No operational cash flows/expenditures of Borrowers to support expansion or growth as to current non-core business or entry into new markets, products states; any such expansion or entry into new markets, products or states is to be funded solely from the issuance or sale or new equity interests, additional equity contributions from existing equity holders, the exercise of outstanding options or warrants, or the net proceeds of any Sub Debt..

9. Borrowers to retain nationally recognized certified public accounting firm reasonably acceptable to the Secured Lenders, which firm will provide annual audits as to Borrowers' and their subsidiaries financial statements (e.g., balance sheet and related statements of income, retained earnings, cash flow and owners' equity), plus quarterly reviews for each fiscal quarter, with delivery dates of each year end audits and reviews to be within 90 days of each fiscal year end and 45 days of each fiscal



|   |   |   |
|---|---|---|
|   |   | quarter end, respectively. The annual audits for 2008 and 2009 will be delivered no later than [June 30, 2010], and the initial quarterly review will be for the fiscal quarter ended [June 30, 2010]. |
|   | 10. | On the Effective Date, payment to Secured Lenders' counsel and other professionals retained by or on behalf of such counsel of all outstanding and accrued unpaid fees and expenses of the counsel and professionals. |
| Documentation: |   | Amendment and restatement of Prepetition Credit Agreement subject to modification as provided for herein and as may be mutually agreed between Borrowers and Secured Lenders. |



LEGAL_US_E # 86765195.10