## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| | : | Case No.  09-40805 |
| TITLEMAX HOLDINGS, LLC, et al., | : | |
| | : | (Jointly Administered) |
| | : | |
| Debtors. | : | Hon. Lamar W. Davis, Jr. |

## DEBTORS' MEMORANDUM OF LAW IN SUPPORT OF
## THEIR REQUEST FOR AN ORDER CONFIRMING THE
## DEBTORS' THIRD AMENDED PLAN OF REORGANIZATION

# TABLE OF CONTENTS

**Page**

I.    THE PLAN SHOULD BE CONFIRMED ................................................................ 1

    A.    The Plan Satisfies the Requirements for Confirmation Under Bankruptcy
        Code Section 1129(a) ........................................................................... 2

        1.    Section 1129(a)(1): The Plan Complies with Applicable Provisions
            of the Bankruptcy Code ................................................................ 2

        2.    Section 1129(a)(2): The Debtors, as the Plan's Proponents, Have
            Complied with Applicable Provisions of the Bankruptcy Code .............. 7

        3.    Section 1129(a)(3): The Plan Has Been Proposed in Good Faith
            and Not by Any Means Forbidden by Law .................................... 8

        4.    Section 1129(a)(4): The Payment for Certain Services and
            Expenses Is Subject to Court Approval ...................................... 10

        5.    Section 1129(a)(5): Necessary Information Regarding Directors
            and Officers of the Debtors Under the Plan Will Be Disclosed ............. 10

        6.    Bankruptcy Code Section 1129(a)(6) Is Not Applicable ....................... 11

        7.    Section 1129(a)(7): The Plan is in the Best Interests of Creditors
            and Equity Interest Holders .................................................... 12

        8.    Section 1129(a)(8): Acceptance by All Impaired Classes ...................... 13

        9.    Section 1129(a)(9): The Plan Provides for Payment in Full of
            Allowed Priority Claims ........................................................ 13

        10.    Section 1129(a)(10): The Plan Has Been Accepted by at Least One
            Impaired Class That Is Entitled to Vote ...................................... 14

        11.    Section 1129(a)(11): The Plan Is Feasible ................................... 15

        12.    Section 1129(a)(12): The Plan Provides for Full Payment of
            Statutory Fees ................................................................. 19

        13.    Sections 1129(a)(13) through 1129(a)(16) Do Not Apply ...................... 19

II.    THE OBJECTION TO CONFIRMATION LACKS MERIT AND SHOULD BE
    OVERRULED ............................................................................... 20

    A.    The Georgia Department of Revenue's Objection Should be Overruled in
        its entirety ................................................................... 20

III.    CONCLUSION ............................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*,
    526 U.S. 434 (1999).............................................................................................12

*Heartland Fed. Savings & Loan Ass'n v. Briscoe Enter., Ltd. II*
    (*In re Briscoe Enter., Ltd. II*) 994 F.2d 1160 (5th Cir. 1993)................................1, 2

*In re Albany Partners, Ltd.*,
    759 F.2d 670 (11th Cir. 1984) .................................................................................8

*In re Armstrong World Indus., Inc.*,
    348 B.R. 111 (D. Del. 2006)....................................................................................2

*In re Armstrong World Indus., Inc.*,
    348 B.R. 136 (Bankr. D. Del. 2006) ...................................................................3, 15

*In re Atherogenerics, Inc.*,
    2009 WL 2407418 (N.D. Ga. June 9, 2009)...........................................................7

*In re Atlanta West VI*
    91 B.R. 620 (Bankr. N.D. Ga. 1988) .......................................................................1

*In re Bloomington Partners*,
    170 B.R. 984 (Bankr. N.D. Ill. 1994) ......................................................................3

*In re Congoleum Corp.*,
    362 B.R. 198 (Bankr. D.N.J. 2007) .......................................................................15

*In re D & G Investments of West Florida, Inc.*,
    342 B.R. 882 (Bankr. M.D. Fla. 2006) ..................................................................17

*In re Drexel Burnham Lambert Group Inc.*,
    138 B.R. 723 (Bankr. S.D.N.Y. 1992)...............................................................16, 17

*In re Eagle-Picher, Inc.*,
    203 B.R. 256 (S.D. Ohio 1996) ...............................................................................9

*In re F.G. Metals, Inc.*,
    390 B.R. 467 (Bankr. M.D. Fla. 2008) .............................................................16, 18

*In re Georgetown Limited Partnership*,
    209 B.R. 763 (Bankr. M.D. Ga. 1997)...............................................................3, 15

# TABLE OF AUTHORITIES
(continued)

**Page**

*In re Haas*,
162 F.3d 1087 (11th Cir. 1998) ........................................................15

*In re Holley Garden Apartments, Ltd.*,
238 B.R. 488 (Bankr. M.D. Fla. 1999) ..........................................11, 15

*In re Immenhausen Corp.*,
172 B.R. 343 (Bankr. M.D. Fla. 1994) ................................................17

*In re Johns-Manville Corp.*,
68 B.R. 618 (Bankr. S.D.N.Y. 1986), *aff'd in part, rev'd in part on other grounds*, 78
B.R. 407 (S.D.N.Y. 1987), *aff'd sub nom., Kane v. Johns-Manville Corp. (In re
Johns-Manville Corp.)*, 843 F.2d 636 (2d Cir. 1988) ...............................2, 8, 15, 18

*In re The Leslie Fay Cos.*,
207 B.R. 764 (Bankr. S.D.N.Y. 1997) ..........................................15, 17

*In re Machne Menachem, Inc.*
371 B.R. 63 (Bankr. M.D. Pa. 2006) ..................................................17

*In re NII Holdings*
Inc., 288 B.R. 356 (Bankr. D. Del. 2002) ............................................15

*In re Nutritional Sourcing Corp.*
No. 07-11038, 2008 WL 5396491, at *5 (Bankr. D. Del. Dec. 23, 2008).................2

*In re One Times Square Assocs. Ltd. P'ship*,
159 B.R. 695 (Bankr. S.D.N.Y. 1993) ................................................15

*In re Sagemwood Manor Associates Ltd. Partnership*,
223 B.R. 756 (Bankr. D. Nev. 1998) .............................................16, 18

*In re SGL Carbon Corp.*,
200 F.3d 154 (3d Cir. 1999)..............................................................8

*In re Sound Radio, Inc.*,
103 B.R. 521 (D.N.J. 1989), *aff'd*, 908 F.2d 964 (3d Cir. 1990)..........................16

*In re Stapleton*,
55 B.R. 716 (S.D. Ga. 1985)...............................................................2

*In re Sun Country Dev., Inc.*,
764 F.2d 406 (5th Cir. 1985) ..............................................................9

*In re Texaco Inc.*,
84 B.R. 893 (Bankr. S.D.N.Y. 1998), *appeal dismissed*, 82 B.R. 38 (S.D.N.Y. 1988)............8

## TABLE OF AUTHORITIES
(continued)

**Page**

*In re Toy & Sports Warehouse, Inc.*,
  37 B.R. 141 (Bankr. S.D.N.Y. 1984) .................................................................3, 8

*In re U.S. Truck Co., Inc.*
  47 B.R. 932 (E.D. Mich. 1985), *aff'd*, 800 F.2d 581 (6th Cir. 1986) ....................16

*In re Wabash Valley Power Ass'n, Inc.*,
  72 F.3d 1305 (7th Cir. 1996) ...................................................................................3

*In re Winn-Dixie Stores, Inc.*,
  356 B.R. 813 (Bankr. M.D. Fla. 2006) ....................................................................2

*John Hancock Mutual Life Insurance Co. v. Route 37 Bus. Park Assocs.*
  987 F.2d 154, 159 (3d Cir. 1993) ............................................................................4

*Kane v. Johns-Manville Corp.*,
  843 F.2d 363 (2d Cir. 1988) ....................................................................................1

*Koelbl v. Glessing*
  (*In re Koelbl*), 751 F.2d 137, 139 (2d Cir. 1984) ..................................................9

*McCormick v. Banc One Leasing Corp.*
  49 F.ed 1524 (11th Cir. 1995) .................................................................................8

*N.L.R.B. v. Bildisco & Bildisco*,
  465 U.S. 513 (1984) .................................................................................................9

*Olympia & York Fla. Equity Corp. v. Bank of N.Y. (In re Holywell Corp.)*
  913 F.2d 873 (11th Cir. 1990) .............................................................................3, 4

*Pereira v. Foong (In re Ngan Gung Rest.)*,
  254 B.R. 566 (Bankr. S.D.N.Y. 2000) ..................................................................10

*Pizza of Hawaii, Inc. v. Shakey's, Inc. (In re Pizza of Hawaii, Inc.)*,
  761 F.2d 1374 (9th Cir. 1985) ...............................................................................16

*Sea Garden Motel & Apts. (In re Sea Garden Motel & Apts.)*
  195 B.R. 294, 304 (D.N.J. 1996) ...........................................................................16

*United States v. Reorganized*
  *CF&I Fabricators, Inc.*, 518 U.S. 213 (1996) ....................................................12

## TABLE OF AUTHORITIES
(continued)

Page

**LEGISLATIVE HISTORY**

H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 412 (1977) ............................................................2, 7

S. Rep. No. 95-989 95th Cong., 2d Sess. 126 (1978) ................................................................2, 7


**STATUTES**

11 U.S.C. § 507 ..........................................................................................................13, 19

11 U.S.C. § 1114 ...............................................................................................................19

11 U.S.C. § 1122 .........................................................................................................2, 3, 5

11 U.S.C. § 1123 ...................................................................................................2, 3, 4, 5, 6, 7

11 U.S.C. § 1125 .................................................................................................................7

11 U.S.C. § 1126 .................................................................................................................7

11 U.S.C. § 1129 ...........................................................1, 2, 7, 8, 9, 10, 11, 12, 13, 14, 15, 18, 19

28 U.S.C. § 1930 ...............................................................................................................19

## PRELIMINARY STATEMENT

TitleMax Holdings, LLC and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors"), hereby submit this memorandum of law in support of their request for an order confirming the Debtors' Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code,[1] dated March 15, 2010 [Dkt. No. 489] (the "Plan").  Attached as Exhibit A hereto is the Debtors' proposed order granting the requested relief.  Contemporaneously herewith, the Debtors are also filing the Affidavit of John Robinson in Support of Confirmation of the Debtors' Third Amended Plan of Reorganization (the "Robinson Affidavit").

For the reasons stated herein, the Debtors respectfully submit that the Plan should be confirmed.  The Plan represents the culmination of extensive, arms'-length negotiations taking place over several months' time.  The Plan presents the Debtors' best opportunity to emerge from Chapter 11 in a timely manner while ensuring the successful reorganization of their businesses.

## I.    THE PLAN SHOULD BE CONFIRMED

To obtain confirmation of the Plan, the Debtors must demonstrate that the Plan satisfies the applicable provisions of Bankruptcy Code section 1129 by a preponderance of the evidence. *See Kane v. Johns-Manville Corp.*, 843 F.2d 363, 648 (2d Cir. 1988); *In re Atlanta West VI*, 91 B.R. 620, 622 (Bankr. N.D. Ga. 1988) ("Consideration of whether a debtor's plan satisfies the requirements of Section 1129 is generally addressed at confirmation.").  As set forth by the United States Court of Appeals for the Fifth Circuit in *Heartland Federal Savings & Loan Association v. Briscoe Enterprises., Ltd. II (In re Briscoe Enterprises., Ltd. II)*,

---

[1]   All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.

> The combination of legislative silence, Supreme Court holdings, and the structure of the [Bankruptcy] Code leads this Court to conclude that preponderance of the evidence is the debtor's appropriate standard of proof under both § 1129(a) and in a cramdown.

994 F.2d 1160, 1165 (5th Cir. 1993); *see also In re Armstrong World Indus., Inc.*, 348 B.R. 111, 120 (D. Del. 2006); *In re Winn-Dixie Stores, Inc.*, 356 B.R. 813, 817 (Bankr. M.D. Fla. 2006). Through filings with the Court, the Robinson Affidavit, and the testimonial evidence which may be adduced at the Confirmation Hearing, the Debtors will demonstrate, by a preponderance of the evidence, that all applicable subsections of Bankruptcy Code section 1129 have been satisfied with respect to the Plan.

### A.    The Plan Satisfies the Requirements for Confirmation Under Bankruptcy Code Section 1129(a)

As addressed in detail below, the Plan satisfies all of the applicable requirements of section 1129(a) of the Bankruptcy Code.

### 1.    Section 1129(a)(1): The Plan Complies with Applicable Provisions of the Bankruptcy Code

Section 1129(a)(1) of the Bankruptcy Code provides that a plan must "compl[y] with the applicable provisions of [the Bankruptcy Code]."   11 U.S.C. § 1129(a)(1); *see also In re Stapleton*, 55 B.R. 716, 719 (S.D. Ga. 1985) ("A plan for reorganization under Chapter 11 must comply with all the requirements of Chapter 11 to pass muster for confirmation.").   The legislative history of section 1129(a)(1) informs that this provision encompasses the requirements of Bankruptcy Code sections 1122 and 1123 governing classification of claims and contents of a plan, respectively.  H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978); *see also In re Nutritional Sourcing Corp.*, No. 07-11038, 2008 WL 5396491, at *5 (Bankr. D. Del. Dec. 23, 2008); *In re Johns-Manville Corp.*, 68 B.R. 618, 629 (Bankr. S.D.N.Y. 1986), *aff'd in part, rev'd in part on other grounds*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd sub*

*nom., Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636 (2d Cir. 1988);

*In re Toy & Sports Warehouse, Inc.*, 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984).

As demonstrated below, the Plan fully complies with the requirements of sections 1122 and 1123 and all other applicable provisions of the Bankruptcy Code.

(a)     The Plan Complies with Bankruptcy Code[2] Section 1122(a)

Bankruptcy Code Section 1122(a) provides in pertinent part as follows:

> Except as provided in subsection (b) of this section, a plan may place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

11 U.S.C. § 1122(a).  For a classification structure to satisfy section 1122, it is not necessary that all substantially similar claims or interests be designated to the same class, but only that all claims or interests designated to a particular class be substantially similar to each other.  *In re Armstrong World Indus., Inc.*, 348 B.R. 136, 159 (Bankr. D. Del. 2006); *In re Bloomington Partners*, 170 B.R. 984, 996 (Bankr. N.D. Ill. 1994) ("If the plan proponent can articulate differences among the claims–that is, if the plan proponent can demonstrate the lack of 'substantial similarity' – then separate classification is proper.").  A debtor has "considerable discretion to classify claims and interests according to the facts and circumstances of the case . . . ."  *Olympia & York Florida Equity Corp. v. Bank of New York (In re Holywell Corp.)*, 913 F.2d 873, 880 (11th Cir. 1990); *In re Wabash Valley Power Ass'n, Inc.*, 72 F.3d 1305, 1321 (7th Cir. 1996); *In re Georgetown Limited Partnership*, 209 B.R. 763, 771 (Bankr. M.D. Ga. 1997).

---

[2]   Bankruptcy Code Section 1122(b) is inapplicable to the instant case, as the Plan does not include a convenience class.

The Plan provides for the separate classification of Claims against and Equity Interests in the Debtors based upon differences in the legal nature and/or priority of such Claims and Equity Interests into individual classes (each, a "Class").  The Plan designates the following Classes of Claims and classes of Equity Interests: Class 1 (Secured Lender Claims), Class 2 (Unsecured Priority Claims), Class 3 (Surbodinated Noteholder Claims), Class 4 (Unsecured Nonpriority Claims), Class 5 (Litigation Claims), and Class 6 (Equity Interests).

Each of the Claims or Equity Interests in each Class is substantially similar to the other Claims or Equity Interests in such Class.  Accordingly, the Debtors' classification of Claims and Equity Interests does not prejudice the rights of holders of such Claims and Equity Interests, is consistent with the requirements of the Bankruptcy Code and, thus, is appropriate.  *See John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*, 987 F.2d 154, 159 (3d Cir. 1993) (explaining that the determination of whether a classification scheme is reasonable "must be informed by the two purposes that classification serves under the Code: voting to determine whether a plan can be confirmed and treatment of claims under the plan") (internal citation omitted); *Olympia & York Florida Equity Corp. v. Bank of New York (In re Holywell Corp.)*, 913 F.2d 873, 880 (11th Cir. 1990) (plan proponent allowed considerable discretion to classify claims and interests according to facts and circumstances of case so long as classification scheme does not violate basic priority rights or manipulate voting).

       (b)      Section 1123(a): The Plan Complies with All Requirements of Section 1123(a) of the Bankruptcy Code

Section 1123(a) of the Bankruptcy Code sets forth seven requirements with which every chapter 11 plan must comply.  *See* 11 U.S.C. § 1123(a).  As demonstrated herein, the Plan fully complies with each enumerated requirement.

(1)    Section 1123(a)(1): Designation of Classes of Claims and Interests

Section 1123(a)(1) requires that a plan must designate classes of claims and classes of equity interests subject to section 1122 of the Bankruptcy Code.  As discussed above, the Plan designates five classes of Claims and one class of Equity Interests subject to section 1122.  Accordingly, the Plan satisfies the requirements of Bankruptcy Code section 1123(a)(1).

(2)    Section 1123(a)(2): Classes That Are Not Impaired by the Plan

Section 1123(a)(2) requires a plan to specify which classes of claims or interests are unimpaired by the Plan.  Article III of the Plan specifies that Class 2 (Unsecured Priority Claims), Class 4 (Unsecured Nonpriority Claims), and Class 5 (Litigation Claims) are unimpaired.  Accordingly, the Plan satisfies the requirements of Bankruptcy Code section 1123(a)(2).

(3)    Section 1123(a)(3): Treatment of Classes That Are Impaired by the Plan

Section 1123(a)(3) requires a plan to specify how classes of claims or interests that are impaired by the plan will be treated.  Article III of the Plan sets forth the treatment of impaired Claims in Class 1 (Secured Lender Claims), Class 3 (Subordinated Noteholder Claims), and Class 6 (Equity Interests) pursuant to the Plan.  Accordingly, the Plan satisfies the requirements of Bankruptcy Code section 1123(a)(3).

(4)    Section 1123(a)(4): Equal Treatment Within Each Class

Section 1123(a)(4) requires that a plan provide the same treatment for each claim or interest within a particular class unless any claim or interest holder agrees to receive less favorable treatment than other class members.  Pursuant to the Plan, the treatment of each Claim against or Equity Interest in a Debtor, in each respective class, is the same as the treatment of

each other Claim or Equity Interest in such class.    Accordingly, the Plan satisfies the requirements of section Bankruptcy Code 1123(a)(4).

(5)    Section 1123(a)(5): Adequate Means for Implementation

Section 1123(a)(5) requires that a plan provide "adequate means for the plan's implementation."  Article V of the Plan and the related Plan Supplement provide adequate and proper means for the implementation of the Plan, including the (i) New Credit Agreement between the Debtors and the Secured Lenders; and (ii) ongoing profits from business operations In addition, the Debtors have filed many of the documents necessary to implement the Plan, including, without limitation, the New Lender Agreement, and the New Subordinated Notes as part of the Plan Supplement.

The transactions contemplated by the Plan are designed to maximize the value of the Debtors' businesses and assets.    Accordingly, the Plan, together with the documents and agreements contemplated thereby, provide the means for implementation of the Plan as required by Bankruptcy Code section 1123(a)(5).

(6)    Section 1123(a)(6): Amendment of the Reorganized
         Debtors' Charters

(a)    Section 1123(a)(6) prohibits the issuance of nonvoting equity securities, and requires amendment of the debtors' charters to so provide.  It also requires that a corporate charter provide an appropriate distribution of voting power among the classes of securities possessing voting power.  The Plan does not provide for the issuance of nonvoting equity securities, and the amended and restated charter documents of the Reorganized Debtors will prohibit the issuance of non-voting equity securities.  Accordingly, the Plan satisfies section Bankruptcy Code 1123(a)(6).

(7)     Section 1123(a)(7): Provisions Regarding Directors and Officers

Bankruptcy Code Section 1123(a)(7) requires that the Plan "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan and any successor to such officer, director, or trustee." *See* 11 U.S.C. § 1123(a)(7).  Tracy Young will continue to serve as the Sole Director of the Reorganized Debtors and as the Chief Executive Officer, while John Robinson will continue to serve as the President.  The selection of these officers will provide stability for the Reorganized Debtors and is consistent with the interests of creditors and equity security holders and public policy in accordance with section 1123(a)(7). Accordingly, the Plan satisfies Bankruptcy Code section 1123(a)(7).

(c)     Section 1123(b): The Plan Incorporates Certain Permissible Provisions

The Debtors believe that the Plan complies with sections 1123 and is consistent with all other applicable provisions of the Bankruptcy Code.  Accordingly, the Debtors submit that the Plan satisfies the requirement of section 1129(a)(1) of the Bankruptcy Code.

**2.     Section 1129(a)(2): The Debtors, as the Plan's Proponents, Have Complied with Applicable Provisions of the Bankruptcy Code**

Bankruptcy Code Section 1129(a)(2) requires that the plan proponent "compl[y] with the applicable provisions of [the Bankruptcy Code]."   11 U.S.C. § 1129(a)(2).   The legislative history of section 1129(a)(2) reflects that this provision is intended to encompass the disclosure and solicitation requirements under Bankruptcy Code sections 1125 and 1126.  *See* H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978) ("Paragraph (2) [of § 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure."); *see also In re Atherogenerics, Inc.*, 2009 WL 2407418 at

*5 (N.D. Ga. June 9, 2009); *In re Johns-Manville Corp.*, 68 B.R. at 630; *In re Toy & Sports Warehouse, Inc.*, 37 B.R. at 149; *In re Texaco Inc.*, 84 B.R. 893, 906-07 (Bankr. S.D.N.Y. 1998), *appeal dismissed*, 82 B.R. 38 (S.D.N.Y. 1988).

Following the hearing on March 14, 2010 at which this Court approved the Disclosure Statement, the Debtors commenced their solicitation process. Following that hearing on March 16, 2010, this Court entered the Order Approving Disclosure Statement, Approving Voting and Solicitation Procedures, and Establishing Certain Dates (the "<u>Scheduling Order</u>"). The Debtors met all the requirements and deadlines directed by the Scheduling Order. The solicitation materials were sent out by first class mail on Friday, March 21, 2010. The solicitation materials were sent to all parties in interest in these bankruptcy cases and included the Disclosure Statement and all exhibits thereto, including the Plan. A ballot and addressed, stamped envelope was also included, where appropriate. In light of this, the Debtors respectfully submit that they have satisfied Bankruptcy Code section 1129(a)(2).

### 3.    Section 1129(a)(3): The Plan Has Been Proposed in Good Faith and Not by Any Means Forbidden by Law

Section 1129(a)(3) of the Bankruptcy Code requires that a plan be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). Although the term "good faith" is not defined in the Bankruptcy Code, in the context of a Chapter 11 plan, "courts have interpreted 'good faith' as requiring that there is a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Code." *McCormick v. Banc One Leasing Corp.*, 49 F.ed 1524, 1525 (11th Cir. 1995*); see also In re Albany Partners, Ltd.*, 759 F.2d 670, 674 (11th Cir. 1984) ("Bad faith exists if there is no realistic possibility of reorganization and the debtor seeks merely to delay or frustrate efforts of secured creditors."); *In re SGL Carbon Corp.*, 200 F.3d 154, 165 (3d Cir. 1999); *In re Johns-Manville Corp.*, 843 F.2d at

649 (citing *Koelbl v. Glessing* (*In re Koelbl*), 751 F.2d 137, 139 (2d Cir. 1984) (interpreting the standard as requiring a showing that "the plan was proposed with honesty and good intentions."). Moreover, "[w]here the plan is proposed with the legitimate and honest purpose to reorganize and has a reasonable hope of success, the good faith requirement of section 1129(a)(3) is satisfied." *In re Sun Country Dev., Inc.*, 764 F.2d 406, 408 (5th Cir. 1985).  The requirement of good faith must be viewed in light of the totality of the circumstances surrounding the establishment of a chapter 11 plan.  *Id.*

The Debtors, as plan proponents, have met their good faith obligation under the Bankruptcy Code.  The Plan, which was developed after many months of analysis and negotiations involving numerous proposals, was proposed with the legitimate and honest purpose of fully repaying all creditors while maximizing the value of the Debtors' estates and effectuating a successful reorganization of the Debtors.  *See* Robinson Aff. ¶¶16-18.  The Plan incorporates settlements with all major constituencies involved in these Chapter 11 Cases.  The Plan (including the Plan Supplement) was developed and negotiated in good faith and at arms'-length among representatives of the Debtors, Secured Lenders, and the Committee, following an extended process.  *See* Robinson Aff. ¶¶11-15; *see also In re Eagle-Picher, Inc.*, 203 B.R. 256, 274 (S.D. Ohio 1996) (plan proposed in good faith when, among other things, it was based on extensive arms' length negotiations by plan proponents).  The Plan provides for the satisfaction of over $150 million of Claims and the distribution to the holders of those claims of cash and or new agreements for payment.  Thus, the Plan achieves the primary objectives underlying a chapter 11 bankruptcy: the reorganization and continuation of the Debtors as viable businesses and the distribution of value to creditors for amounts owing.  *See N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 528 (1984) ("The fundamental purpose of reorganization is to prevent a debtor

from going into liquidation, with an attendant loss of jobs and possible misuse of economic resources."); *Pereira v. Foong (In re Ngan Gung Rest.)*, 254 B.R. 566, 570 (Bankr. S.D.N.Y. 2000) (stressing the importance of payment of creditors in chapter 11 cases).  Inasmuch as the Plan promotes the rehabilitative objectives and purposes of the Bankruptcy Code and has garnered the overwhelming support of the parties voting on the Plan, the Plan and the related documents have been filed in good faith and the Debtors have satisfied their obligations under section 1129(a)(3).

**4.      Section 1129(a)(4): The Payment for Certain Services and Expenses Is Subject to Court Approval**

Bankruptcy Code Section 1129(a)(4) requires that certain professional fees and expenses paid by the plan proponent, the debtor, or a person receiving distributions of property under the plan, be subject to approval by the Bankruptcy Court as reasonable.  11 U.S.C. § 1129(a)(4).  As of the date hereof, all such payments have been made in accordance with the terms of this Court's Interim Compensation Order [Dkt No. 137], and all future such payments to professionals will be made only after Court approval of the professionals' final applications for allowance of compensation for services rendered and reimbursement of expenses.  All payments of compensation for services rendered or reimbursement of expenses incurred after the Confirmation Date until the Effective Date will be paid in the ordinary course.

**5.      Section 1129(a)(5): Necessary Information Regarding Directors and Officers of the Debtors Under the Plan Will Be Disclosed**

Bankruptcy Code Section 1129(a)(5) requires that the plan proponent disclose the identity and affiliations of the proposed officers and directors of the reorganized debtor; that the appointment or continuance of such officers and directors be consistent with the interests of creditors and equity security holders and with public policy; and that there be disclosure of the identity and compensation of any insiders to be retained or employed by the reorganized debtor.

See 11 U.S.C. § 1129(a)(5); *see also In re Holley Garden Apartments, Ltd.*, 238 B.R. 488, 493 (Bankr. M.D. Fla. 1999).

As stated, the Debtors have satisfied the foregoing requirements. Tracy Young will serve as the Sole Director of the Reorganized Debtors and the Chief Executive Officer. John Robinson will serve as the President of the Reorganized Debtors. The officers of the Debtors immediately prior to the Effective Date will serve as the officers of the Reorganized Debtors. The Plan disclosed that the Debtors propose to maintain Tracy Young and John Robinson's compensation at their pre-petition levels.

The proposed officers' knowledge of the Debtors' operations, businesses, accounts, finances, and business relationships are critical to maximizing the value of the Debtors' estates in these cases. Their particular business knowledge will also facilitate prompt distribution to creditors pursuant to the Plan. As such, the appointment of such individuals is consistent with the interests of the Debtors' Creditors and with public policy.

### 6.    Bankruptcy Code Section 1129(a)(6) Is Not Applicable

Bankruptcy Code section 1129(a)(6) provides that "[a]ny governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval." 11 U.S.C. § 1129(a)(6). Section 1129(a)(6) is inapplicable because after confirmation of the Plan, the Debtors' require no government approval with respect to rates and their business will not involve rates established or approved by, or otherwise subject to, any governmental regulatory commission.

### 7.    Section 1129(a)(7): The Plan is in the Best Interests of Creditors and Equity Interest Holders

Section 1129(a)(7) of the Bankruptcy Code is often referred to as the "best interests test" or the "liquidation test," and provides, in relevant part:

> With respect to each impaired class of claims or interests –
>
> (A)    each holder of a claim or interest of such class –
>
> (i)    has accepted the plan; or
>
> (ii)    will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date . . . .

11 U.S.C. § 1129(a)(7).  The best interests test focuses on individual dissenting creditors rather than classes of claims.  *See Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434 (1999).  Under the best interests test, the court "must find that each [non-accepting] creditor will receive or retain value that is not less than the amount he would receive if the debtor were liquidated [under chapter 7 of the Bankruptcy Code]."  *Id*. at 442; *United States v. Reorganized CF&I Fabricators, Inc.*, 518 U.S. 213, 228 (1996).  As section 1129(a)(7) makes clear, the liquidation analysis applies only to non-accepting impaired claims or equity interests.

In the instant Case, no such classes meet the limitations of section 1129(a)(7).  All Classes have accepted the Plan.  Additionally, as made clear in the liquidation analysis (the "Liquidation Analysis") attached to the Disclosure Statement, the best interests test is satisfied as to each Holder of a Claim in all classes of Claims under the Plan.  The Liquidation Analysis demonstrates that the values that could be realized by the Holders of Claims and Equity Interests upon disposition of the Debtor's assets pursuant to a chapter 7 liquidation would be less than the value of the recoveries available to such Holders under the Plan.  *See* Robinson Aff. ¶¶ 49-53.

In these cases, as described in more detail in the Disclosure Statement and in the Robinson Affidavit, the Cash available for distribution to creditors in a chapter 7 case would consist of the proceeds from sale of the Debtors' business and collection of the Debtors' accounts receivable and the sale of miscellaneous inventory, property, stores and equipment and other assets. The available Cash would also be reduced by the costs and expenses of the liquidation and by such additional administrative and priority claims that may result from the termination of the Debtors' businesses and the use of chapter 7 for purposes of liquidation. The Liquidation Analysis has taken into account the increased costs associated with a liquidation under chapter 7 which substantially reduce the proceeds available for distribution. These costs would include, among other things, administrative fees and costs payable to a trustee in bankruptcy and professional advisors to such trustee and substantial increases in claims which would be satisfied on a priority basis or on parity with creditors in these cases.

In sum, if these cases were converted to cases under chapter 7 of the Bankruptcy Code, the value that creditors would recover would drop precipitously. Unsecured creditors in Classes 3 and 4 would only see a recovery of approximately 27% in such a scenario. Due to the value destruction, delay, and uncertainties inherent in a conversion to chapter 7, the Debtors submit that the best interests test established pursuant to section Bankruptcy Code 1129(a)(7) is satisfied. *See id.*

### 8.    Section 1129(a)(8): Acceptance by All Impaired Classes

Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests either accept the plan or not be impaired by the plan. Each class of impaired claims has accepted the Plan, as shown by the "Balloting Results" attached hereto as Exhibit B. The Plan, therefore satisfies section Bankruptcy Code 1129(a)(8).

9.      **Section 1129(a)(9): The Plan Provides for Payment in Full of Allowed Priority Claims**

Bankruptcy Code Section 1129(a)(9) requires that persons holding claims entitled to priority under Bankruptcy Code section 507(a) receive specified cash payments under the Plan.

With respect to Administrative Expense Claims, in accordance with Bankruptcy Code section 1129(a)(9)(A), the Plan provides that each holder of an Allowed Administrative Expense Claim will receive payment in full in Cash of the unpaid portion of such Allowed Administrative Expense Claim (a) on the Effective Date or as soon thereafter as is reasonably practicable.  Thus, the Plan satisfies Bankruptcy Code section 1129(a)(9)(A).

With respect to Priority Tax Claims, on, or as soon as reasonably practicable after the later of (i) the Effective Date; or (ii) the date on which a Priority Tax Claim becomes an Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall receive on account of such Allowed Priority Tax Claim, in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Priority Tax Claim, (i) Cash equal to the unpaid portion of such Allowed Priority Tax claim, or (ii) such other treatment as to which the Allowed Priority Tax Claim Holder and the Reorganized Debtors shall have agreed in writing.

Based upon the foregoing, the Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

10.     **Section 1129(a)(10): The Plan Has Been Accepted by at Least One Impaired Class That Is Entitled to Vote**

Section 1129(a)(10) of the Bankruptcy Code requires the affirmative acceptance a plan by at least one class of impaired claims, "determined without including any acceptance of the plan by any insider" if a class of claims is impaired by the Plan.  11 U.S.C. § 1129(a)(10).  The Debtors have met this standard, as Class 1 (Secured Lenders) and Class 3 (Subordinated Noteholder Claims) have unanimously accepted the Plan.  See Balloting Results.

### 11.    Section 1129(a)(11): The Plan Is Feasible

Section 1129(a)(11) of the Bankruptcy Code requires that, as a condition to confirmation, the Bankruptcy Court determine that a plan is feasible.  Specifically, the Bankruptcy Court must determine that:

> Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

11 U.S.C. § 1129(a)(11).  The statute requires the Court to determine whether a plan is workable and has a reasonable likelihood of success.  *See In re Haas*, 162 F.3d 1087, 1090 (11th Cir. 1998); *In re Armstrong World Indus., Inc.*, 348 B.R. 136, 167 (D. Del. 2006); *In re NII Holdings*, 288 B.R. 356, 364 (Bankr. D. Del. 2002); *In re The Leslie Fay Cos.*, 207 B.R. 764, 788 (Bankr. S.D.N.Y. 1997).

"The feasibility standard is whether the plan offers a reasonable assurance of success. Success need not be guaranteed."  *Kane v. Johns-Manville Corp.*, 843 F.2d at 649; *see also In re Georgetown Limited Partnership*, 209 B.R. 763, 770 (Bankr. M.D. Ga 1997) ("While a plan is not required to guarantee a successful reorganization, a court must examine whether the debtor can realistically carry out the provisions of the plan, and whether the plan offers a reasonable prospect of success."); *In re Holley Garden Apartments, Ltd.*, 238 B.R. 488, 494 (Bankr. M.D. Fla. 1999) ("The plan proponent need not show a guaranty of success, but merely a reasonable expectation of success.") (citation omitted).  *In re Congoleum Corp.*, 362 B.R. 198, 203 (Bankr. D.N.J. 2007) ("It is generally recognized that the purpose of the feasibility requirement in § 1129(a)(11) is to prevent the confirmation of visionary plans, but it does not demand irrefutable proof of success."); *In re One Times Square Assocs. Ltd. P'ship*, 159 B.R. 695, 709 (Bankr. S.D.N.Y. 1993) ("'It is not necessary that the success be guaranteed, but only that the

plan present a workable scheme of reorganization and operation from which there may be a reasonable expectation of success.'"); *In re U.S. Truck Co., Inc.*, 47 B.R. 932, 944 (E.D. Mich. 1985) ("'Feasibility' does not, nor can it, require the certainty that a reorganized company will succeed."), *aff'd*, 800 F.2d 581 (6th Cir. 1986).[3]

The feasibility of a plan is a fact intensive inquiry made on a case-by-case basis. *In re F.G. Metals, Inc.*, 390 B.R. 467, 475 (Bankr. M.D. Fla. 2008).  However, "it is clear that there is a relatively low threshold of proof necessary to satisfy the feasibility requirement."  *Id.* (quoting *In re Sea Garden Motel and Apartments*, 195 B.R. 294, 304 (D.N.J. 1996)); *see also In re Sagemwood Manor Associates Ltd. Partnership*, 223 B.R. 756, 762 (Bankr. D. Nev. 1998).

The key element of feasibility is whether there exists a reasonable probability that the provisions of the plan can be performed.  The purpose of the feasibility test is to protect against visionary or speculative plans.  *See Pizza of Hawaii, Inc. v. Shakey's, Inc. (In re Pizza of Hawaii, Inc.)*, 761 F.2d 1374, 1382 (9th Cir. 1985).  However, just as speculative prospects of success cannot sustain feasibility, speculative prospects of failure cannot defeat feasibility.  *See In re Drexel Burnham Lambert Group Inc.*, 138 B.R. 723, 762 (Bankr. S.D.N.Y. 1992) ("The mere prospect of financial uncertainty cannot defeat confirmation on feasibility grounds.") (citing *In re U.S. Truck*, 47 B.R. at 944).

Applying the foregoing standards of feasibility, courts have identified the following factors as probative:

(a)    the adequacy of the capital structure;

---

[3]   As there does not appear to be a case from the United States Eleventh Circuit Court of Appeals discussing the feasibility standards in depth, courts in this Circuit generally look to cases on feasibility decided in other circuits, as the standards do not appear to vary by circuit.  *See, e.g., In re Sound Radio, Inc.*, 103 B.R. 521, 523 (D.N.J. 1989), *aff'd*, 908 F.2d 964 (3d Cir. 1990); *Sea Garden Motel & Apts.(In re Sea Garden Motel & Apts.)*, 195 B.R. 294, 304 (D.N.J. 1996).

     (b)     the earning power of the business;

     (c)     economic conditions;

     (d)     the ability of management;

     (e)     the probability of the continuation of the same management;

     (f)     the availability of prospective credit, both capital and trade;

     (g)     the adequacy of funds for equipment replacements;

     (h)     the provisions for adequate working capital; and

     (i)     any other related matters which will determine the prospects of a sufficiently successful operation to enable performance of the provisions of the plan.

*Leslie Fay*, 207 B.R. at 789; *see also In re Immenhausen Corp.*, 172 B.R. 343, 348 (Bankr. M.D. Fla. 1994); *In re D & G Investments of West Florida, Inc.*, 342 B.R. 882, 885 (Bankr. M.D. Fla. 2006); *In re Machne Menachem, Inc.*, 371 B.R. 63, 71 (Bankr. M.D. Pa. 2006). The foregoing list is neither exhaustive nor exclusive. *In re Drexel Burnham*, 138 B.R. at 763.

The financial projections (the "Financial Projections") attached to the Disclosure Statement show in greater details the Debtors' expectations for the years ahead. While the Debtors are limited to expanding at a rate of four (4) stores per year under the Plan, the Debtors still foresee fairly dramatic increases in revenues. For 2010, the Debtors are projecting EBITDA[4] of $137,299,507 with net income of $116,180,013. In 2011, the Debtors project EBITDA of $174,178,807 and net income of $157,110,573. The Debtors have only provided 2012 projections through the first three months (at which time the Secured Lenders will be repaid in full), but through March of 2012, the Debtors project EBITDA of $54,464,961 and net

income of $51,622,798.    These Financial Projections indicate that the Debtors will have sufficient resources to meet all of their obligations under the Plan.  *See* Robinson Aff. ¶¶ 60-62.

In order for a plan to be feasible, a debtor must present "ample evidence that the plan has a reasonable probability of success."  *In re Sagewood Manor Assoc. Ltd. Partnership*, 223 B.R. 756, 762 (Bankr. D. Nev. 1998) (citing *In re Acequina*, 787 F.2d 1352, 1364 (9th Cir. 1986)). "Feasibility is established through expert testimony and those knowledgeable of the future prospect of the reorganized debtor.  The inquiry is on the viability of the reorganized debtor, and its ability to meet its future obligations . . . ."  *Id.* at 762 (internal quotations and citations omitted).  Courts have held that a such ample evidence can include presenting both "conservative" and "best case" projections.  *Id.* at 763 (citing *Acequina*, 787 F.2d at 1364). Courts recognize that estimates of contingent claims cannot be made with absolute certainty and that the debtor may rely on reasonable estimates.  *Matter of Johns-Manville Corp.*, 68 B.R. 618, 631 (Bankr. S.D.N.Y. 1986).  Moreover, a plan need only offer a reasonable probability of success and may still be confirmable "even if the debtor's projections are aggressive and do not view all business prospects in the worst possible light."  *In re F.G. Metals, Inc.*, 390 B.R. 467, 475-76 (Bankr. M.D. Fla. 2008) (citing *In re T-H New Orleans Limited Partnership*, 116 F.3d 790, 801-802 (5th Cir. 1997)).

The Debtors now have tentative settlements in place with respect to both lawsuits which make up the Litigation Claims.  Combined, the Debtors have settled these cases for under $400,000 in Cash, as well as certain non-monetary consideration.  This figure is an amount the Debtors can easily afford, and far below any amount which should trigger feasibility concerns

---

[4] Earnings before interest, taxes, depreciation and amortization.  EBITDA is used to analyze and compare profitability between companies and industries because it eliminates the effects of financing and accounting decisions.

from this Court.  Much as visionary plans should not be approved on feasibility grounds, visionary liabilities should not cause the Plan to fail.  See *In re Drexel Burnham, at* 762.  The Debtors are working rapidly to finalize and formalize the settlements they have agreed to in principal to settle the Litigation Claims, but even in the unfortunate event that these settlements collapse, the Debtors believe the $400,000 figure they have currently agreed to is a fair representation of the potential liability these Claims represent.

Based upon the foregoing, the Plan satisfies the feasibility standard of section 1129(a)(11) of the Bankruptcy Code.

### 12.    Section 1129(a)(12): The Plan Provides for Full Payment of Statutory Fees

Section 1129(a)(12) of the Bankruptcy Code requires the payment of "[a]ll fees payable under section 1930 [of title 28 of the United States Code], as determined by the court at the hearing on confirmation of the plan."  11 U.S.C. § 1129(a)(12).  Section 507 of the Bankruptcy Code provides that "any fees and charges assessed against the estate under [section 1930 of] chapter 123 of title 28" are afforded priority as administrative expenses.  11 U.S.C. § 507(a)(1). In accordance with these provisions, Article II of the Plan provides that all such fees and charges, to the extent not previously paid, will be paid on the Effective Date or thereafter as may be required.

### 13.    Sections 1129(a)(13) through 1129(a)(16) Do Not Apply

Section 1129(a)(13) of the Bankruptcy Code requires a plan to provide for retiree benefits at levels established pursuant to section 1114 of the Bankruptcy Code.  See 11 U.S.C. § 1129(a)(13).  There are no retiree benefits and therefore section 1129(a)(13) is inapplicable. Section 1129(a)(14) of the Bankruptcy Code relates to the payment of domestic support obligations.  The Debtors are not subject to any domestic support obligations, and, as such, this

section of the Bankruptcy Code does not apply.  Section 1129(a)(15) applies only in cases in which the debtor is an "individual" (as that term is defined in the Bankruptcy Code).  None of the Debtors is an "individual."  Finally, section 1129(a)(16) of the Bankruptcy Code provides that property transfers by a corporation or trust that is not a moneyed, business or commercial corporation or trust be made in accordance with applicable provisions of nonbankruptcy law; however, as each of the Debtors is a moneyed, business, or commercial corporation, this section is not applicable.

## II.    THE OBJECTION TO CONFIRMATION LACKS MERIT AND SHOULD BE OVERRULED.

The Debtors received one (1) objection to confirmation of the  Plan. (The same objection was filed twice, once as an objection to the Second Amended Plan and once as an objection to the Plan.)  The Debtors do not believe that this objection has raised grounds that should compel the Court to deny confirmation of the Plan.

### A.    The Georgia Department of Revenue's Objection Should be Overruled in its entirety

On April 7, 2010, the Georgia Department of Revenue ("Revenue") filed its *Objection to Confirmation of Plan* [Dkt. No. 522] (the "Objection").  As an initial matter, the Debtors do not believe any amount is owed to the Revenue.  The Debtors spoke directly to a representative of Revenue on April 7, 2010, who conceded that the claim was filed in error and the Debtors do not owe any amounts.  On April 8, 2010, counsel for the Debtors spoke with Ms. Julie Adam Jacobs, Assistant Attorney General for the State of Georgia and representative of Revenue, who advised the Debtors that the Objection would be withdrawn.  As of the filing of this Memorandum of Law, the Objection has not been withdrawn, but the Debtors remain hopeful that the Objection will be withdrawn prior to the Confirmation Hearing because the underlying claim is not actually owed by the Debtors.  In fact, Revenue itself filed an amended proof of claim on October 23,

2009 (proof of claim No. 662) in which Revenue itself Amended its own claim from $19,060.00 to only $200.00.

Proceeding to the merits of the Objection, they seem to be twofold: (1) the timing of payments; and (2) what remedies Revenue will have if the Debtors default and fail to make payments as required under the Plan.  It is understandable that Revenue may be confused as to when it will receive payment on its alleged claim.  As its own representatives acknowledge the Debtors do not owe any amount, the Debtors certainly do not intend to make any payments on this Claim.  However, as Revenue itself notes in the Objection, the Plan makes very clear that Priority Tax Claims will be paid on "the later of (i) the Effective Date; or (ii) the Date on which a Priority Tax Claim becomes an Allowed Claim."  The Debtors believe this language is rather clear and speaks for itself.  Absent a claims objection (which in this case will be filed), the Claim will be paid on the Effective Date.

Revenue's second point is slightly more baffling.  Clearly, if the Debtors fail to pay Priority Tax Claims they will be in violation of the Plan.  The Debtors expect to substantially consummate this Plan on or as soon as reasonably possible after the Effective Date.  In such a scenario, the only situation in which the Holder of a Claim against the Debtors will have any concerns related to payments by the Debtors is when they are related to the claims objection process.  As such, the Debtors believe this Court is the proper venue to hear any such matters and it would be inappropriate for a state court (or any other court) to hear litigation between the Debtors and any party in interest regarding prepetition amounts owed by the Debtors and subject to the discharge contained in the Plan.

In sum, the Debtors are hopeful this Objection will be withdrawn but in any event it should be overruled in its entirety.

## III.    CONCLUSION

For the foregoing reasons, the Debtors respectfully request that this Court enter an order

confirming the Plan, and granting the Debtors such other and further relief as is just and proper.

Dated:    April 9, 2010                              Respectfully submitted,
          Savannah, Georgia


                                                     /s/ Marvin A. Fentress
                                                     Marvin A. Fentress (GA Bar No. 258628)
                                                     Gray & Pannell LLP
                                                     P.O. Box 8050 (31412)
                                                     24 Drayton Street, Suite 1000
                                                     Savannah, GA 31401
                                                     Telephone: 912- 443-4043
                                                     Facsimile: 912- 443-4063

                                                     and

                                                     Thomas R. Califano
                                                     Jeremy R. Johnson
                                                     Christopher R. Thomson
                                                     DLA Piper LLP (US)
                                                     1251 Avenue of the Americas
                                                     New York, New York  10020-1104
                                                     Telephone: 212-335-4500
                                                     Facsimile: 212-335-4501

                                                     Counsel for Debtors
                                                     and Debtors in Possession

**Exhibit A**

**<u>Proposed Confirmation Order</u>**

**Exhibit B**

**<u>Classes and Voting Results</u>**

|       |             |            |                  | Percentage in Favor (of Amount Voted) | |
|-------|-------------|------------|------------------|-----------|-----------|
| Class | Designation | Impairment | Entitled To Vote | By Amount | By Number |
| Class 1 | Secured Lender Claims | Yes | Yes | 100% | 100% |
| Class 2 | Unsecured Priority Claims | No | No (Deemed to Accept) | -- | -- |
| Class 3 | Subordinated Noteholder Claims | Yes | Yes | 100% | 100% |
| Class 4 | Unsecured Nonpriority Claims | No | No (Deemed to Accept) | -- | -- |
| Class 5 | Litigation Claims | No | No (Deemed to Accept) | -- | -- |
| Class 6 | Equity Interests | Yes | Yes | 100% | 100% |